L7NPBRAO

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   THE BRANCH OF CITIBANK, N.A.
    ESTABLISHED IN THE REPUBLIC OF
4   ARGENTINA,

5              Petitioner,

6         v.                              21 CV 06125 (VM)
                                          Telephone Conference
7   ALEJANDRO DE NEVARES,

8              Respondent.

9   ------------------------------x
                                          New York, N.Y.
10                                        July 23, 2021
                                          12:01 p.m.
11
    Before:
12
                    HON. VICTOR MARRERO,
13
                                          District Judge
14
                  APPEARANCES VIA TELECONFERENCE
15
    PILLSBURY WINTHROP SHAW PITTMAN LLP
16       Attorneys for Petitioner
    BY:  ROBERT L. SILLS
17       RYAN ADELSPERGER

18  KUDMAN TRACHTEN ALOE POSNER, LLP
         Attorneys for Respondent
19  BY:  GARY TRACHTEN
         DAVID N. SAPONARA
20

21

22

23

24

25

L7NPBRAO

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Good afternoon.  This is Judge Victor

3   Marrero.  This is a proceeding in the matter of Citibank,

4   Argentina v.  Alejandro DeNevares, docket number 21 CV 6125.

5   Do we have a court reporter on the line?

6          THE REPORTER:  Yes, your Honor.  It's Rose.  Good

7   afternoon.

8          THE COURT:  Thank you.

9          Counsel, please enter your appearance.

10          MR. SILLS:  On behalf of petitioners, it's Robert

11   Sills and Ryan Adelsperger on behalf of the Pillsbury firm.

12          MR. TRACHTEN:  Good afternoon, your Honor.  On behalf

13   of the respondent, Gary Trachten and David Saponara of Kudman

14   Trachten Aloe Posner.

15          THE COURT:  All right.  Thank you.

16          The Court scheduled this proceeding in response to

17   requests by petitioner on a notice to show cause for a

18   temporary restraining order and relief, requesting the Court to

19   enjoin proceedings or potential litigation of matters in

20   Argentina, and to compel the defendant to arbitrate the dispute

21   that is at issue.

22          Let's first set some ground rules in terms of how much

23   time we will address the matter on each side.  Let me just

24   indicate that I have read the documents that the parties have

25   submitted, the complaint and the petition, in particular.  I

L7NPBRAO

1    have not reviewed any or seen that the defendants have filed

2    any written response, but we will hear their presentation and

3    arguments at this proceeding.

4         I would suggest, given the Court's familiarity with

5    the underlying facts, that we allow each side initially ten

6    minutes apiece to present any material arguments that they may

7    wish to have the Court consider, and we will then assess

8    whether anything beyond that initial argument is necessary.

9         All right.  Petitioner, Mr. Sills?

10        MR. SILLS:  Thank you very much, your Honor, and I

11   should say since we see no papers from the respondents, nor

12   have we been informed by e-mail or otherwise of what position

13   they take, to some extent, and I apologize in advance, we may

14   be addressing arguments they haven't raised because we don't,

15   frankly, know what their position is because of the failure to

16   file papers in accordance with the order to show cause that

17   your Honor signed.

18        That being said, your Honor, this is a typical case of

19   a party litigating in a foreign forum in violation of an

20   agreement to arbitrate disputes in New York, and the feature

21   that I think makes this case seem complicated, although it

22   really isn't, is the fact that our client is the Buenos Aires,

23   the Argentine branch of Citibank, but it is a separate entity

24   for these purposes.

25        And as you can see from Mr. Pertine's declaration,

L7NPBRAO

1    which is attached to and part of our moving papers -- he's the

2    general counsel of the branch in Argentina -- it's subject to

3    separate regulation.  It keeps its own books and records.  It

4    has its own employees.

5          And most notably, in his declaration, the branch --

6    the parent, Citibank NA, the company that Mr. DeNevares

7    actually sued, the New York bank, is not responsible as a

8    matter of Argentine law, for the debts of the branch.

9          And when Mr. DeNevares, back before 2007, was working

10   for the branch in Argentina, he eventually resigned to take a

11   different position within the Citibank group of companies.  And

12   when he did that, he signed an acknowledgment, which also

13   appears as an attachment to our papers, stating and

14   acknowledging that Citibank NA and Citibank Argentina were

15   different entities, and he gave a release in favor of Citibank

16   Argentina, which presumably explains why he made the tactical

17   decision not to sue Citibank Argentina in his Argentine lawsuit

18   but to sue Citibank NA.

19         But he did attempt to serve Citibank NA by serving

20   Citibank Argentina in Argentina, but the court there quashed

21   service and held that there were two entities and that Citibank

22   Argentina had not, in fact, been sued.

23         Now, in connection with taking on his new employment

24   in New York, for which he received a very substantial pay

25   increase, Mr. DeNevares executed what's called an employee

L7NPBRAO

handbook receipt and also executed a Citigroup Principles of

Employment document, which appears as Exhibit 4 to Ms. Cores'

declaration.  And both of those have broad arbitration clauses.

And the arbitration clause specifically extends not only to

Citigroup but to Citigroup subsidiaries and affiliates, which

obviously includes Citibank Argentina, the separate entity.

        I should say, both not only, as a matter of Argentine

law but as a matter of New York law, bank branches and the

banks themselves are often considered to be separate juridical

entities.  And, in fact, as your Honor will recall, in a case

you decided called *Martinez v. Republic of Cuba*, you

specifically stated, and it was key to the hearing, that under

Article 4A of New York UCC "a branch or separate office of a

bank is a separate bank for purposes of this article," and then

citing the decision of the New York Court of Appeals in

*Motorola Credit Corp.*, which stated that that separate entity

rule is a firmly established principle of New York law.  And

it's noteworthy that that principle was applied in the context

of enforcement proceedings against banks.

        So we have an employee of a separate organization in

Argentina, who agreed to arbitrate disputes with that entity,

that gave a release in favor of that entity that he elected not

to sue but to sue the New York entity, Citibank NA.  Prevailed,

after 12 years in the Argentine courts, on a claim that

Argentine law somehow gave him a cause of action for his

L7NPBRAO

1    dismissal in 2007 in New York as part of a reduction in force

2    during the fiscal crisis.

3        But we don't challenge his right to attempt to collect

4    that judgment against Citibank NA following whatever procedures

5    are appropriate, presumably a claim under the Uniform Foreign

6    Country Money Judgments Recognition Act, which I believe is

7    Article 53 of the CPLR in New York.

8        What he can't do is bring a claim against Citibank,

9    the Citibank branch in Argentina because it's a separate entity

10   that he made the decision not to sue, didn't sue, acknowledged

11   was different.

12       And this would have, if he were able and not

13   restrained from pursuing that remedy, Citibank NA, as

14   Mr. Pertine observes, has its own books, has its own regulator,

15   reports to the Argentine banking regulatory authorities under

16   their scheme, and this would have an adverse financial impact

17   on Citibank Argentina in Argentina under the rules and

18   regulations that govern it.

19       Now, in discussions -- it won't surprise your Honor

20   that there have been efforts to resolve this case in Argentina.

21   Mr. DeNevares has not disclaimed any attempt to pursue claims

22   against the bank in Argentina.  And switching seats for the

23   moment with his Argentine lawyer, I'm sure that's a remedy he

24   will likely pursue, but one that he can't.

25       The harm of not restraining this proceeding to

L7NPBRAO

1    Citibank is apparent and real.  The harm to Mr. DeNevares of

2    what we had originally asked for, a brief restraining order, is

3    de minimus, if anything.  Citibank is one of the most solvent

4    entities in the world.  If he can enforce his claim against the

5    entity he chose to sue, he will get paid.  Citibank has tens of

6    billions of dollars in assets, and although we think that this

7    judgment is unusual and large for the kind of claim that

8    Mr. DeNevares said, that's not before the Court at this point

9    nor, for that matter, is his right to attempt to pursue a claim

10   against Citibank Argentina.

11         We're not asking the Court to rule that Citibank

12   Argentina is somehow immune from process or that the judgment

13   can't be collected down there.  That's a question for the

14   arbitrators, and we have commenced an arbitration.  And

15   Mr. DeNevares is free to pursue that claim in the forum that he

16   voluntarily agreed to at the time he received a very

17   substantial increase in his compensation and moved to New York.

18         So both because of the very strong policy New York has

19   and that the United States has in favor of enforcing

20   international arbitration agreements, this agreement is subject

21   both to the Panama Convention and the New York Convention.

22         To the case law that's cited in our papers, and

23   starting with China Trade, extending through Judge Lynch's

24   decision in the Storm case, this is an ordinary case for the

25   Court to exercise its discretion and enjoin proceedings that

L7NPBRAO

1    are about to be brought in violation of an arbitration

2    agreement that requires that claims be pursued in a different

3    forum than the Argentine courts.

4          Now, in an e-mail yesterday, because we had received a

5    request for an extension from Mr. DeNevares' Argentine

6    lawyers -- interestingly enough, in an English-language note

7    that stated that Mr. Arias, his lawyer there, didn't speak

8    English -- asking for an extension, and we said that we would

9    agree to an extension if he would agree to a restraint during

10   the period of time that it would take for the briefing,

11   argument and decision of our motion for a preliminary

12   injunction.

13         We got no response on that.  We reached out when

14   Mr. Trachten appeared late yesterday, I believe at about 6:00,

15   and again offered to discuss this.  That was rejected.

16   Mr. Trachten told us, although I'm not sure on what basis, that

17   the Argentine courts were closed for two weeks, putting to one

18   side that this may take more than two weeks to decide in an

19   orderly way, and it should be decided in an orderly way, on

20   papers, that I'm not in a position to say -- I'm not an

21   Argentine lawyer, and no one on the call is -- that there

22   aren't other enforcement mechanisms available to Mr. DeNevares

23   in Argentina.

24         I certainly know if he were pursuing a claim in

25   New York and for some reason the courts were closed, he could

L7NPBRAO

1    proceed to attempt to enforce a judgment here.  And my

2    understanding is that the same is true in Argentina.  But

3    again, in the interest of orderly proceedings, I think we've

4    made a showing for preliminary injunction.

5          Mr. DeNevares and his counsel have elected not to put

6    in papers.  The case is ripe for decision, and we believe we've

7    made a more than adequate showing for preliminary injunction.

8    If your Honor is inclined to give them an opportunity to put in

9    papers, despite their default and despite not engaging with us

10   on an offer to agree on a reasonable briefing schedule, then I

11   think, at a minimum, there ought to be a temporary restraining

12   order put in place to maintain the status quo in Argentina

13   while the case is briefed and while your Honor is deciding it.

14         I believe I've now exhausted my time, Judge, but would

15   be happy to respond to any questions from my presentation.

16         THE COURT:  All right.  Thank you very much.

17         Let me turn to Mr. Trachten.

18         MR. TRACHTEN:  Thank you, your Honor.  We were just

19   retained yesterday.  Mr. Arias received the papers by Federal

20   Express the day before.  That's when we first started talking

21   to him.  His English is very weak.  His English facilities,

22   whenever I spoke to him, we needed a translator, and if we had

23   normal service under the Hague Convention, under rules of

24   Argentina, that papers would have had to have been translated

25   into Spanish.  They were not.

L7NPBRAO

1    If need be, we would like some time to -- maybe a

2    couple of weeks, maybe we could do some briefing.  I think

3    letter briefing would probably suffice.  If we were to make

4    some motions, it would include, I guess, first and foremost,

5    dismissal for lack of capacity, forum non-convenience,

6    insufficiency of service, probably, and we have to look at some

7    of these, and also to stay the arbitration.

8    However, we are prepared today to outline the

9    arguments that we would put to paper, and we suggest, your

10   Honor, that based on the oral presentation today, that simply

11   by deconstructing the motion papers may, by itself, suffice to

12   demonstrate that based on those papers and maybe some inquiries

13   that your Honor might want to make of both counsel, that the

14   motion should be denied and the petition dismissed.

15   To begin with, the Court hardly needs to go beyond the

16   7.1 corporate disclosure statement and the description of the

17   parties in the petition and elsewhere to see the infirmity of

18   the application.  The caption is the Branch and otherwise

19   described, as with a small B, branch, of Citibank NA

20   established in Republic of Argentina.  And as much as the

21   petitioner tries to create the illusion that the branch is a

22   distinct legal entity, it is not.  It is a branch.  Citibank's

23   lawyers can try to mislead on that, but it is Citibank.  It is

24   the judgment debtor and it is not a third party.

25   However, the petitioner, however you want to name it,

L7NPBRAO

has not pointed to any rule of law that makes the branch a

distinct corporation.  The fact that Argentina, as do other

countries, impose certain licensing and other regulatory

requirements on branches of foreign banks does not change the

fact that the assets held by the branch are Citibank NA assets.

         As District Judge Sotomayor in *Greenbaum v.*

*Handlesbanken*, 26 F.Supp. 2d 649 at 652 and 653:  "However, the

law seems fairly well settled that the domestic branch of a

foreign bank is not a separate entity underneath either

New York or federal law.  New York has long adhered to this

general rule that when considered in relationship to the parent

bank, branches are not independent agencies.  They are, what

their name imports, merely branches.  They are subject to the

supervision and control of the parent bank and are

instrumentalities whereby the parent carries on its business

and are established for its own particular purposes, and their

business conduct and policies are controlled by the parent

bank, and their property and assets belong to the parent bank,

though nominally held in the names of the particular branches."

         Now, I'll acknowledge that this particular quote deals

with when we are talking about the domestic branch of a foreign

bank, but the law is no different the other way.

         Now, Mr. Sills has brought to your attention the

Martinez case, which although I didn't realize it, apparently

you've had opportunity to write with reference to.  But what's

L7NPBRAO

1    quite clear is that that's a special rule that's carved out for

2    garnishments, restraints and, et cetera, when we're dealing

3    with -- the bank is not a party to the judgment, where the bank

4    is not a judgment creditor, and when the so-called branch, as

5    if it was an entity, is not a party on that.

6         It deals, when there's a third-party adjustment and

7    it's a special rule, that you can't garnish against one branch

8    for an obligation that came out of another branch and has no

9    application here.

10        So what really is going on here?  Citibank, a judgment

11   debtor to Mr. DeNevares in the amount in excess of $9 million

12   is stretching the truth and the law in an effort to erect road

13   blocks to his enforcement of his judgment.  Let's examine some

14   things, let me give you some questions that I think we need to

15   address.

16        What is the dispute, if there is one, for which

17   arbitration is demanded?  Who are the parties to the dispute?

18   Is this really just an effort to re-litigate that which

19   Citibank already lost in the Argentinian court?  Why shouldn't

20   this case, this whole matter, be resolved in an Argentinian

21   court?  Does the arbitration agreement extend to the dispute

22   that's before us that's been presented to the AAA?  What

23   evidence has been presented of an imminent threat of a

24   violation of Citibank's rights?  What evidence has been

25   presented of any imminent harm?  What evidence are in these

L7NPBRAO

1    papers for the need of an injunction in aid of arbitration, in

2    particular?  And what exactly does the proposed TRO and the

3    preliminary injunction purport to prohibit until when?

4          So let's start with, what is this dispute?  The

5    judgment against Citibank was -- by the way, it was not a claim

6    against, as they point out, it was against Citibank NA.  It was

7    not -- it was for a dismissal that occurs after, by the way,

8    the release that they referenced.  A release wouldn't have

9    applied to it anyway.  I don't know why they're making any

10    reference to the release.  This was a later dismissal, and this

11    case was not about -- was particularly about a dismissal.

12          If you look at the caption of the case that's

13    referenced in the order to show cause, where they want the

14    injunction, the name of that case is DeNevares, Alejandro, v.

15    Citibank NA, and then it says, S/*despido*.  If you translate

16    *despido*, it means dismissal.  This is a case about the

17    dismissal, the later dismissal proceedings.  Citibank has lost

18    that case.

19          Now, is it an employment dispute, or is it a dispute

20    about whether DeNevares is permitted to execute against the

21    Citibank assets that are held by its branch in Argentina, where

22    the case was litigated?  And that matters because if it is not

23    an employment case, and even perhaps if it's related to

24    employment, it's certainly beyond the scope of the arbitration

25    agreement.  And if it's not an employment case, there is no bar

L7NPBRAO

1    to an Argentinian court hearing a motion to compel arbitration

2    and compelling arbitration.

3            Your Honor, the reason this might not have gone to

4    arbitration in the first place, the dismissal case, is because

5    Argentina does have a rule not to enforce arbitration

6    agreements in employment disputes.  However, Citibank could

7    have -- back in 2009, when this case was brought, it could have

8    come to this Court and sought an injunction against

9    Mr. DeNevares to prohibit him from pursuing the case in the

10   Argentinian court, and it could have started a declaratory

11   arbitration, which it could have sought to compel him to go

12   through, but it didn't.

13           Citibank, instead, litigated this case through for

14   many years.  It had some ups; it had some downs, and then in a

15   decision by the Appellate court there, it was found to owe

16   Mr. DeNevares $9 million.

17           Now, if it is an employment matter, then I don't know

18   why they chose to submit it to the International Center for

19   Dispute Resolution, which is where they've submitted it, but

20   that only had some significance, which I may get to later, I

21   don't want to take too much time.

22           Well, who are the parties?  Well, there's no such

23   thing as a branch as an entity.  There is -- what we know is

24   that there are certain special regulatory requirements.  So the

25   parties really here are Citibank NA and Mr. DeNevares.  If you

L7NPBRAO

1    look at rule 17, Federal Rule 17, and you look at who has the

2    capacity to be sued, 17(b), an individual who is not acting as

3    a representative, a corporation under the law in which it was

4    organized for a corporation, or for all other parties by the

5    law of the state where the court is located.  And I don't know,

6    you could ask Mr. Sills, what is its capacity to sue?  I would

7    be interested in hearing the answer.

8          Now, this, in fact, is precisely a re-litigation of

9    what was before the court in Argentina.  The court in Argentina

10   expressly dealt with all the facts that they brought to you.  I

11   just received, a couple of hours ago, a translation of one of

12   the judge's decisions in the Appellate court decision, and it

13   dealt expressly with this idea, did he move, did he leave the

14   Argentinian entity and then go to Citibank, and back and forth.

15         And the court -- that court, which has to be given its

16   due, treated the two entities as the same and treated those --

17   I hereby resign; I hereby join here -- treated those -- chose

18   to treat those matters as form over substance.  As a matter of

19   fact, I can quote, and we'll get this decision to you.  This is

20   what the court says:  Citibank Argentina and Citibank New York

21   were a single bank.  That is what the court in Argentina has

22   ruled.

23         Now, it's interesting that they were quick to bring to

24   your attention a case having to do with service of process,

25   where a court, we think mistakenly, did not accept that the

L7NPBRAO

1   branch would be the proper agent to service the process for NA;

2   although, that really didn't have any consequence.  It was a

3   harmless error.  That, they brought to your attention, but the

4   actual decision in the Argentinian court, which was of

5   substance and which was the basis of the case, there, they hid

6   the ball.  So that is what precisely is going on here.

7            Now, the arbitration -- and it seems to me that if we

8   have a judgment in Argentina, that the Argentinian court should

9   control whether and to what extent the executions there are

10  proper or are improper in terms of assets that are in

11  Argentina.

12           Now, let's take a really close look, because this is

13  of critical importance, at the arbitration agreement on which

14  they relied.  And in its brief, the petitioner, on page 12 and

15  13 -- you can read along with me, if you like -- flat out

16  misrepresented the scope of the arbitration agreement.  And

17  this is what they stated, they said:  The arbitration agreement

18  unambiguously states that any disputes with Citigroup, which

19  expressly includes the petitioner here, arising of or related

20  or anyone to Citigroup or its affiliates, including claims

21  arising during or after DeNevares' employment, must be resolved

22  through arbitration.  That's what the brief says.

23           Notably, they did not quote from the arbitration

24  agreement.  You don't see that.  You have to go into the very,

25  very tiny print of an exhibit to an affidavit to find it.  It

L7NPBRAO

1    then goes on to characterize the arbitration clause, of which I

2    said did not quote, as a classic broad clause.  Let's take a

3    look at what it says.  This is -- I don't have the exhibit

4    number here.

5         David, does somebody want to let me know where it

6    appears in the record?

7              MR. SAPONARA:  It's Exhibit 1 to the petition.

8              MR. TRACHTEN:  It's what?

9              MR. SAPONARA:  Exhibit 1 to the petition.

10             MR. TRACHTEN:  All right.  This is what it said.  So

11   the name of the document is Principles of Employment, and you

12   get down to the fourth bullet point, and here's what it says:

13   Fourth, you agree to follow our dispute resolution arbitration

14   procedure for resolving all disputes, based on legally

15   protected rights, statutory, contractual or common law rights,

16   that may arise between you and Citigroup, Inc., and et cetera,

17   et cetera, its affiliates, its directors and blah, blah, blah.

18        Then it goes on to describe -- this is the operative

19   part -- these are our procedures.  Our procedures are divided

20   into two parts:  First, an internal dispute resolution

21   procedure, which allows you to seek a review of any action

22   regarding your employment or termination of your employment,

23   which you think is wrong and violates your legal rights.

24   That's the first one.

25        Now, let's look at the second.  This is the

L7NPBRAO

1     arbitration section.  Second, in the unusual situation this

2     procedure does not resolve your dispute -- meaning the dispute

3     that you have about whether your rights were violated -- you

4     and the firm agree to submit the dispute, within the time

5     provided by the applicable statutes, to binding arbitration

6     before the NASD.  And my client was a -- did have such a

7     license.

8          I don't think Citibank NA is a member of the NASD.  I

9     thought they went through hoops to show why it shouldn't go

10    through the NASD.  They could have just said we're not a

11    member.  So that's it.

12         So the only thing that was agreed if you have an a

13    complaint about your employment, termination or the conditions

14    of your employment, that is what's agreed to be arbitrated.

15    There's nothing in here that can at all be stretched to say you

16    should arbitrate a dispute about what assets fall within the

17    right in the collection of a judgment.  This is a dispute about

18    what assets are available in the collection of a judgment and,

19    therefore, there is nothing to arbitrate.  This arbitration

20    agreement is not warranted at all.

21         Now, evidence, what is the evidence?  Also, we're

22    looking at a preliminary injunction.  There needs to be some

23    kind of action taken or threatened that requires something to

24    be stopped.  What is the threat to violate the rights?  None.

25    It's purely conclusionary.  There's a judgment against

L7NPBRAO

1   Citibank.  The rest is speculation.

2          There is no evidence concerning Mr. DeNevares'

3   intentions or plans to execute, let alone to execute on assets

4   other than Citibank NA's assets, which it has the right to

5   execute on.  And, of course, yes, we do claim that the assets

6   held by the branch are Citibank assets.  Otherwise, how could

7   we reach them?  If Citibank -- if it's not a subsidiary and

8   Citibank doesn't own its stock, we can't execute against its

9   stock.  Citibank can't, by creating a branch, put its assets it

10  owns beyond what creditors can get at.  So there's no threat

11  there.

12          What is the evidence of the irreparable harm?  This

13  involves money.  I suppose if we wrongfully -- if my client

14  wrongfully executes, there's a remedy in arbitration to get the

15  wrongful execution damages.  It's about money.

16          Now, even the notion of in aid of arbitration, if

17  there is an agreement, if there is an agreement of binding

18  arbitration, you would go to arbitration.  The only reason

19  there's an exception to go to court is in aid of arbitration

20  because, typically, arbitration does not afford a remedy for an

21  emergency situation.

22          But they filed with the ICDR, and if you take a look

23  at the ICDR's rules, the ICDR has a special rule that if you

24  have an emergency application, they will have a -- in one

25  business day, appoint a single arbitrator to immediately

L7NPBRAO

1     resolve your execution.  So with that being the case, assuming

2     that they pick a proper forum which is what they selected, they

3     have a remedy in arbitration without having to go to court in

4     order to obtain a provisional remedy.

5             So let's take a look -- I think this is most

6     important.  Let's take a look at --

7             THE COURT:  Excuse me, Mr. Trachten.

8             MR. TRACHTEN:  Yes.

9             THE COURT:  I've given you quite a lot of latitude to

10    the initial amount of time that I indicated.

11            MR. TRACHTEN:  I'm sorry.

12            THE COURT:  That's because I recognize that you got

13    these papers just yesterday and were only recently retained,

14    but at this point, I will ask you to summarize.

15            MR. TRACHTEN:  Okay.  Your Honor, rather than

16    summarize, if I may, with your permission, just make this last

17    point to address what they're asking for in the relief, which

18    will just be a minute, a minute and a half, a minute.

19            THE COURT:  All right.

20            MR. TRACHTEN:  If you're looking at their enjoining,

21    aside from what they've said, what they want to enjoin is

22    that -- first, they want to enjoin DeNevares bringing any

23    action relating to his employment at Citibank Argentina.  I

24    don't know why.  There is no such proceeding and there's none

25    existing, none threatened.

L7NPBRAO

1    And then it says:  Any attempt to enforce any judgment

2    rendered by Citibank NA in that case against Citibank

3    Argentina.  Well, I don't know what that means, especially

4    since we don't think of Citibank Argentina.  So that's just a

5    vague -- very vague.  So that would be need clarification even

6    if it were to be granted.

7    It says:  Compelling DeNevares to cease prosecution of

8    any such litigation.  Well, they haven't showed you there is

9    any litigation which is being prosecuted, and compelling

10    DeNevares to arbitrate any dispute the parties in the action

11    that's there.  Well, I guess it shouldn't be any dispute.  It

12    should be a dispute that would be covered, and this is not one

13    that's covered.

14    Thank you, your Honor, and I apologize for going

15    beyond my time.  I actually was trying to go quickly and not

16    pay that much attention to the time.

17    THE COURT:  Well, thank you very much.  Mr. Trachten,

18    you made reference in your last argument to the fact or your

19    observation there is nothing on the record to suggest that your

20    client has brought or is about to bring or is contemplating

21    bringing litigation in Argentina related to this matter.  And

22    you characterize the petitioner's arguments on that score as

23    pure speculation, but let me ask you pointedly.  Is there an

24    intent on your client's part to pursue proceedings in Argentina

25    related to this dispute?

L7NPBRAO

1          MR. TRACHTEN:  You know, I don't think there's any

2     intention -- I don't know what the procedures in Argentina are

3     for the execution of a judgment, and so I guess there is an

4     intention, when they're able to.  I'm advised by local counsel

5     that until August 2nd, nothing can be done.  And so, you know,

6     so I guess what they want to do is, when they can, the

7     intention is to execute on whatever Citibank NA assets they

8     find in Argentina, and I think it's up to there to determine

9     what's a Citibank entity.

10          THE COURT:  Thank you.  Now, again, Mr. Trachten, one

11     other question.  Mr. Sills had in his arguments made

12     representations that, in relation to both the Argentine counsel

13     and yourself, they have offered to essentially refrain from

14     further action if you stipulate or agree to some form of

15     standstill order.  What is your response to that?

16          MR. TRACHTEN:  Your Honor, my response is, I hope that

17     we've demonstrated that there is not -- that there aren't

18     grounds here for a TRO, but if your Honor thinks there's enough

19     of an issue here that some kind of standstill should be in

20     place, we can consent.

21          I've been authorized to consent to some kind of

22     standstill, but it would have to be a complete standstill for

23     all parties, meaning that, in the meantime, neither Citibank

24     nor any of its affiliates or branches or anything would be able

25     to take any steps whatsoever in regard to its response to the

L7NPBRAO

1    fact that there's this judgment against them.

2              And we would want to make sure that any kind of

3    restraining order would be very explicit about precisely what

4    we're allowed to do or we're not allowed to do because the way

5    we read the restraining order that is -- we don't know what it

6    means to say can enforce a judgment against NA, which is not an

7    entity that is independent of the judgment debt.

8              THE COURT:  All right.  Thank you.

9              Mr. Sills, any response to the preceding arguments?

10             MR. SILLS:  Your Honor, yes.  I'll try and be as brief

11   as possible, and I don't see any point to be served by

12   responding to many of the arguments that were raised or hinted

13   at in the form of questions.

14             With respect to the last point raised, I don't,

15   frankly, understand what this oral application for a

16   counter-restraint is or would be.  Citibank Argentina is

17   attempting to protect its interests and its right to have this

18   dispute arbitrated, not to have Mr. DeNevares stripped of his

19   right to attempt to pursue his claim that the judgment should

20   be enforced against Citibank Argentina, but simply requiring

21   him to pursue it in the forum to which he agreed.

22             And with respect to that, it was an extensive argument

23   made by Mr. Trachten about what he says is the limited scope of

24   the arbitration clause.  First, as your Honor is certainly

25   aware, under the ICDR rulings and the rules of every leading

L7NPBRAO

1   arbitration institute, that is a question for the arbitrators

2   who, under the rule, have the jurisdiction to determine their

3   own jurisdiction and what goes by the rubric of competence,

4   competence in arbitration law.

5           But, your Honor, that's one of the two arbitration

6   clauses that he agreed to that Mr. Trachten was reading.

7   There's a broader one in the employment -- although that one is

8   broad enough, there's a broader one in the employment

9   arbitration policy that he expressly acknowledged.  It appears

10  on page 38, and it's an attachment to Ms. Cores' declaration.

11  And it says this:  "The policy -- that is the employment

12  arbitration policy -- "makes arbitration the required and

13  exclusive forum for the resolution of all employment disputes

14  based on legally protected rights, statutory, contractual or

15  common law rights, that may arise between an employee or former

16  employee and Smith Barney, or its current and former parent,

17  subsidiaries and affiliates, and it's in their current and

18  former officers, directors, employees, or agents, including,

19  without limitation" -- and it lists a series of statutory

20  claims.

21          And says, "In any other federal, state or local

22  statute, regulation or common law doctrine regarding

23  employment, discrimination in employment, the terms and

24  conditions of employment, termination of employment" -- which

25  is precisely what's at issue here -- "breach of contract,

L7NPBRAO

1   defamation, retaliation, whistleblowing or any claims arising

2   under any Citigroup Inc. separation plan."

3          Now, given the rules that we're all familiar with

4   about how arbitration clauses are to be construed broadly, how

5   arbitration is a special favorite of the law as a result of the

6   Federal Arbitration Act, I don't think there's any serious

7   doubt that a claim to enforce a judgment arising out of his

8   2007 termination by Citibank NA, however characterized, doesn't

9   come within that clause.  But that's not, with respect, an

10  issue for the Court; it's an issue for the arbitrators, and

11  that is precisely why Citibank Argentina has commenced that

12  arbitration.

13         With regard to the rather extensive argument made

14  about how Citibank Argentina and Citibank NA are one in the

15  same, we don't claim that they are separate for all purposes,

16  and we don't -- on the other hand, one cannot say that, in the

17  banking field, that a bank and its branches are one in the same

18  for all purposes, as your Honor's decision in Martinez makes

19  very clear.  And here, Mr. DeNevares acknowledged that.

20         Attached to Ms. Cores' declaration is his resignation

21  letter, and it says this:  "I, furthermore, understand and

22  accept that Citibank NA, New York branch, is a different

23  employer" -- and that's when he was about to take up his

24  employment here in New York -- "and, consequently, I will have

25  no right to claim from Citibank NA branch established in the

L7NPBRAO

1    Republic of Argentina any item or difference or indemnity that

2    may result as a consequence of or in relation to my labor

3    relationship with Citibank NA, New York branch, or the

4    termination thereof."

5          That is precisely what he is attempting to do now, and

6    I think we heard from Mr. Trachten that he wouldn't disclaim

7    that his client in Argentina, on or after August 2nd --

8    although I'm not entirely sure of the significance of that

9    date -- will attempt to do precisely what he said in that

10    agreement he wouldn't do, in exchange for which he received a

11    pay increase in six figures.

12          And the same thing happened when he attempted to serve

13    Citibank NA by serving Citibank Argentina.  The judge presiding

14    in the labor court specifically said that he would quash

15    service because the service had been made on a, quote, legal

16    representative of Citibank NA.  I'm reading from a translation,

17    obviously; the original decision is in Spanish.  Buenos Aires

18    branch of the Argentine Republic, not a defendant in the case.

19          Presumably because of the agreement that he had signed

20    when he took the better job in New York, walking away from any

21    liability that he could claim against Citibank Argentina, he

22    elected to structure his lawsuit against Citibank NA and only

23    against Citibank NA.

24          He couldn't serve them.  He had acknowledged they were

25    different when he took the job.  It appears to have been a wise

L7NPBRAO

tactical decision because he now has this enormous judgment

against Citibank NA, which, as we say, he is free to attempt to

pursue.  We're not seeking any relief with regard to his

attempt to go after Citibank NA in New York.

And one would think that for a nine or $10 million

judgment, he can engage counsel and pursue that claim subject

to whatever defenses New York law makes available.  What he

can't do is do precisely what he said he wouldn't do when he

took that job in New York, and when he structured his case in

Argentina to plead around that waiver he had given.

If he wants to pursue Citibank Argentina, he's free to

do so, but he's got to do it in the arbitral forum that he

agreed to, and that's the ordinary office of an antecedent

junction.  They're granted routinely in cases like this, where

there's an effort to end-run an arbitration clause.  The China

Trade case is directly applicable here.  No harm will befall

him.

I believe there has been an agreement here that a

temporary restraining order can be entered, and it's very clear

what we're asking.  We're asking that he be restrained from

taking any efforts to enforce the judgment he has against

Citibank NA against Citibank Argentina, and that's the relief

we seek.  I believe that's the relief that's been consented to

now.

There's no possible harm to him of agreeing to that

L7NPBRAO

1   while this motion is considered.  If we get the restraint, then

2   the temporary restraining order will have preserved the status

3   quo and prevented him from making mischief in Argentina, in

4   violation of Citibank Argentina's rights.

5        And if the motion were to be denied, although we

6   obviously submit that it's well founded and should be granted,

7   then all that would have happened would be a brief delay in the

8   execution of the judgment there.

9        With respect to the application that was just made, I

10  don't know what that means.  We have come to this Court asking

11  for relief.  Obviously, we can't be restrained from that.

12  There is a petition for discretionary review of the Argentine

13  judgment pending in Argentina, the rough equivalent of a

14  petition for certiorari here.  And I don't see that there's any

15  conceivable basis for asking that that not be pursued.

16       And with respect to the rest of the application, other

17  than the idea that the best defense is a good offense, I'm not

18  entirely sure what's being asked for.  In fact, I'm not sure at

19  all what's being asked for, but it seems to me we've reached a

20  point that there are serious issues here.  There's a likelihood

21  of success on the merits.  My client will be harmed, not least

22  by having to report -- you know, this will hit their books in

23  Argentina, where they are regulated and regulated closely by

24  the banking and fiscal authorities.  And as I say, there's no

25  conceivable harm to Mr. DeNevares.

L7NPBRAO

1          He's holding, at the moment, the judgment for almost

2     $10 million against one of the largest corporations in the

3     world, which is fully and highly solvent.  Unless your Honor

4     has any further questions, I think that concludes our

5     presentation.

6          THE COURT:  All right.  Thank you, Mr. Sills.  You had

7     in your earlier remarks indicated that you had reached out to

8     the defendants and offered to work out a standstill agreement?

9          MR. SILLS:  Yes, your Honor.

10          THE COURT:  What would be the nature of the standstill

11     that you contemplate?

12          MR. SILLS:  The standstill would be a temporary

13     restraining order.  Well, assuming your Honor isn't prepared

14     today to decide the preliminary injunction application, that

15     pending the disposition of the motion for a preliminary

16     injunction, that Mr. DeNevares would agree -- and I can

17     actually quote from -- if you bear with me one second -- what

18     we proposed initially to Mr. Arias.

19          And he was, in fact, in accordance with -- it is not

20     true that the papers were just served yesterday.  The papers

21     were served in accordance with the order to show cause that

22     your Honor signed on Saturday.  We know that they were received

23     because we received an e-mail from Mr. Arias, as I say, in

24     English saying that he didn't speak English.

25          But what we ask is a TRO in ordinary form that will

L7NPBRAO

1    enjoin Mr. DeNevares, and anyone acting in concert with him,

2    from taking any steps in Argentina to collect or enforce the

3    judgment rendered in his favor by Chamber Eight of the National

4    Court of Labor Appeals, or otherwise to commence or prosecute

5    any claim, action or demand against Citibank Argentina, and

6    that's pending the hearing and decision on the motion for a

7    preliminary injunction that's the ordinary scope of a TRO here.

8          It will simply maintain the status quo, and we think

9    it's entirely appropriate here.  And I wrote that to Mr. Arias

10   by e-mail I think an hour after he -- he contacted us shortly

11   after his client defaulted in either asking for an extension or

12   putting in papers, in accordance with your Honor's order of

13   Saturday.  I wrote back to him a little less than an hour later

14   making that offer.  I never heard back from him or anyone else

15   acting on his behalf until I got an e-mail yesterday at around

16   6:00 p.m. from Mr. Trachten stating that he had appeared.

17         I wrote back to him by e-mail about half an hour

18   later, reminding him that we had offered to enter into a

19   standstill and agree on a reasonable briefing schedule.

20   Mr. Trachten then wrote back rejecting that offer and stating

21   that he would appear today and present argument, and that's

22   where the matter stood when we started this argument at noon

23   today.

24         THE COURT:  All right.  Thank you very much.  I

25   appreciate the parties' thorough airing of this issue at this

L7NPBRAO

1     hearing.  I'm going to ask the parties to endeavor to see if

2     they can negotiate a standstill agreement that would address

3     the issues or concerns of both sides, and I will give you one

4     week to do that.  If you do not, if you're unable to reach such

5     a standstill agreement within one week, I will then rule on the

6     TRO petition.

7              Mr. Trachten, is that clear and understood?

8              MR. TRACHTEN:  Yes, that's fine, your Honor.

9     Mr. Sills had quite a bit to say there.  Can I have about 30

10    seconds to respond to something?  He refers to the handbook

11    agreement.  If you'll notice the front page of the handbook

12    says:  This is a handbook for Smith Barney employees only.  My

13    client was never a Smith Barney employee, and even as read by

14    Mr. Sills, it referred to employment disputes.  This is clearly

15    a dispute about how to -- you know, about what can happen in a

16    judgment.  Citibank litigated.  Did not go to enjoin suit,

17    litigated.  It is bizarre to --

18             THE COURT:  Mr. Trachten?  Mr. Trachten?

19             MR. TRACHTEN:  Yes, I'm sorry.

20             THE COURT:  Let me stop you because you're going back

21    into the merits of the dispute.  At this point, the only thing

22    that I've asked is whether you're prepared to sit down with

23    Mr. Sills for the next week and attempt to reach a standstill

24    agreement.  And if you're not able to do so and Mr. Sills, on

25    Friday of next week, says that you did not reach an agreement,

L7NPBRAO

1   then I will then proceed to rule on the petition.

2                  MR. TRACHTEN:  That would be fine, your Honor, and I

3   would expect we should be able to figure out, actually,

4   probably in a matter of hours, rather than in a week --

5                  THE COURT:  If you're able to do it in a -- as soon as

6   you do it, in a matter of hours, then just communicate with me

7   and I'll take the next step, whatever that may be.

8                  MR. TRACHTEN:  Right.  I'm concerned about a briefing

9   schedule, your Honor, because I am -- I will be out of the

10  country on a congressional delegation for much of August; so

11  that's -- I'm interested in accelerating, as best we can,

12  considering that we have to write papers.  And you can see

13  we're writing against a lot of papers; so I'd like to try and

14  expedite that.  Thank you, your Honor.

15                  THE COURT:  All right.  Thank you.

16                  Anything else, Mr. Sills?

17                  MR. SILLS:  Just a point of clarification, your Honor.

18  We'll endeavor in good faith to reach such an agreement with

19  Mr. Trachten.  I think the notion that we can agree in an hour

20  or two might be a bit on the optimistic side.

21                  Could we have an undertaking that pending our

22  negotiation, that they will not take any steps to try and

23  enforce this judgment against the branch in Argentina?  And my

24  concern is that while we're negotiating it, that the

25  circumstances may change and the status quo may be disturbed in

L7NPBRAO

1   Argentina.

2           THE COURT:  Well, implicit in what I understand the

3   standstill agreement here, is that neither party will take any

4   step which is going to essentially change the status.

5           MR. TRACHTEN:  That's correct, your Honor.  That's my

6   understanding, and I think that's also with respect to putting

7   a hold on anything going on in arbitration in the meantime.

8           THE COURT:  All right.  Sit down and see what you can

9   do in the next week, and then communicate with the Court.

10  Thank you.

11          MR. SILLS:  And we'll -- thank you very much, your

12  Honor.

13          THE COURT:  Thank you.

14          MR. TRACHTEN:  Thank you, your Honor.

15          THE COURT:  Have a good weekend.

16          MR. TRACHTEN:  You, too.

17          (Adjourned)

18

19

20

21

22

23

24

25