LCHNCITO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

THE BRANCH OF CITIBANK, N.A.
ESTABLISHED IN THE REPUBLIC OF
ARGENTINA,

               Petitioner,

          v.                   21 Civ. 6125 (VM)

ALEJANDRO DE NEVARES,

               Respondent.

                            Oral Argument
-------------------------------x

                            New York, N.Y.
                            December 17, 2021
                            11:00 a.m.

Before:

                  HON. VICTOR MARRERO,

                            District Judge

              APPEARANCES (Via Telephone)

PILLSBURY WINTHROP SHAW PITTMAN LLP
     Attorneys for Petitioner
BY:  RYAN ADELSPERGER
     ROBERT L. SILLS

KUDMAN TRACHTEN ALOE POSNER LLP
     Attorneys for Respondent
BY:  GARY TRACHTEN
     DAVID N. SAPONARA

LCHNCITO

1        THE COURT:  The Court entered a temporary restraining

2   order on this matter on July 31 of this year, having found that

3   Mr. De Nevares' argument that Citibank Argentina and CBNA were

4   the same entity, that that was not likely to succeed on the

5   merits.

6        The TRO restrained Mr. De Nevares from making any

7   effort to enforce against Citibank Argentina assets, the

8   judgment that Mr. De Nevares had obtained against CBNA in a

9   proceeding in Argentina.

10       The TRO, as the Court understood it, would allow

11  Mr. De Nevares to enforce the judgment against CBNA directly or

12  against Citibank Argentina in arbitration.

13       Citibank Argentina requested that the Court refer the

14  dispute to arbitration in Argentina.  Mr. De Nevares' Argentine

15  counsel commenced a proceeding in the Argentina labor court to

16  collect against CBNA assets that actually, according to the

17  petitioner, according to Citibank Argentina, belong to Citibank

18  Argentina.

19       In that proceeding Mr. De Nevares' counsel sought a

20  declaration that CBNA and Citibank Argentina were not separate

21  entities for the purposes of enforcing the judgment.  Mr. De

22  Nevares joined in that request and consequently Citibank

23  Argentina petitioned to have Mr. De Nevares withdraw from that

24  request for clarification on the ground that it violated the

25  terms of this Court's temporary restraining order.

3

LCHNCITO

1          Based on these developments, there are a couple of

2    essential questions that the parties' submissions address in

3    part, and I will invite you to briefly elaborate on.

4          One is, does the action that Mr. De Nevares took in

5    Argentina in joining the request for clarifications in that

6    proceeding constitute a violation of the TRO and, if so, what

7    would be an appropriate remedy in this Court for such a

8    violation?

9          Would a fine for contempt of court be warranted, or is

10   any relief in this Court directing withdrawal of Mr. De

11   Nevares' request moot at this point in light of an Argentina

12   court's most recent ruling?

13         I will allow the parties in turn an initial ten

14   minutes to address these questions or other matters that they

15   feel would be vital for a resolution of the dispute at this

16   point.

17         Let's begin with the petitioner.  Mr. Adelsperger?

18         MR. SILLS:  Your Honor, it's Robert Sills on behalf of

19   the petitioner.  Mr. Adelsperger does come ahead of me in the

20   alphabet, but with your Honor's permission, I will present the

21   petitioner's case.

22         THE COURT:  Proceed.

23         MR. SILLS:  Thank you, your Honor.

24         Your Honor, the questions you ask are, of course, the

25   ones that are addressed in the recent correspondence to the

LCHNCITO

1    Court.

2            I think it's abundantly clear that this is a direct

3    violation of the TRO and that Mr. De Nevares is now seeking to

4    benefit from his contemptuous conduct.  The TRO could not have

5    been clearer.

6            It says at the bottom of page 2 and the top of page 3

7    of your Honor's order, The foregoing restraint includes,

8    without limitation, any effort, any effort to enforce the

9    judgment against Citibank Argentina or any of its assets based

10   on the claim that Citibank Argentina and Citibank NA are not

11   separate entities for such purposes.

12           It doesn't say unless he prevails in an Argentinian

13   court.  It prohibits him from making that application.  It is

14   abundantly clear from the record in this case that this

15   application was made not only by Mr. De Nevares' lawyers,

16   although I think the initial argument we saw, that an

17   application by the lawyers was somehow separate from

18   application by de Nevares is, to say the least, a highly

19   questionable proposition, particularly because the restraint,

20   in accordance with Rule 65, prevents not only Mr. De Nevares,

21   but anyone acting in concert with him from attempting to

22   execute the judgment against Citibank Argentina in that way,

23   and it's hard to think of anyone who acts more in concert with

24   a restrained party than his retained counsel.

25           In any event, your Honor, it is abundantly clear from

LCHNCITO

the admissions made by counsel, New York counsel for Mr. De Nevares, that this was done directly on Mr. De Nevares' behalf. The correspondence is attached to the papers.  Interestingly enough, correspondence admitting that is attached to the papers submitted by Mr. De Nevares.

There is a claim that at one point, that seems to have been abandoned, that his filing in Argentina was defensive.  I frankly don't know what that means, but the key piece of evidence here, your Honor, is the decision of the appellate court itself.  After the trial court in Argentina had denied the application that was filed on November 5, it was transferred to an appellate tribunal, which ruled very quickly.

Looking at the certified translation of that order supplied by Mr. De Nevares in the papers submitted to this Court, the second page of that order, which is page 7 of the ECF filing by Mr. De Nevares, No. 49, filed on the 15th of this month, it said the plaintiff filed a motion -- in the second paragraph -- for clarification with appeal in subsidy asking for precisely the relief that the TRO prohibits him from asking for.  Paragraph IV on that same page goes on to say, For methodological reasons, the appeal filed by the plaintiff on 11/5/21 will be dealt with first.  And that paragraph concludes by saying Citibank Argentina and Citibank New York were a single bank.  This means, however, there is a profound unity under the plurality of apparently different persons varying the

LCHNCITO

1   figure of the employer according to the branch to which the

2   plaintiff was referred to provide services, concluding that it

3   was uselessly fragmented to the detriment of Mr. De Nevares.

4           That is precisely the question that is to be addressed

5   in arbitration which your Honor found was likely to be the

6   means by which Mr. De Nevares had agreed, as indeed he had, and

7   has to resolve these disputes.

8           So I don't think there's the slightest question that

9   the record shows that Mr. De Nevares, through counsel

10  obviously, on his own behalf and not with this fanciful

11  argument that this was done by counsel on their own behalf, did

12  exactly what he was prohibited from doing and now claims to be

13  the beneficiary of this improperly obtained ruling in

14  Argentina.

15          So, to your Honor's first question, yes, this does

16  constitute a direct and blatant violation of this court's

17  order.

18          What is the appropriate remedy?  He ought to be

19  compelled to withdraw his application and not to take any

20  further steps to take advantage of the improperly obtained

21  judgment, order, however characterized, that he obtained in

22  Argentina.

23          He should withdraw that application.  It is his

24  application.  He is the beneficiary of it.  It is within his

25  power to right the wrong, and the way in which that is

LCHNCITO

1    customarily done in civil contempt is, of course, a fine.

2              We had suggested a daily fine, but apparently the TRO

3    itself wasn't enough.  He doesn't respect this Court's order,

4    and so we would suggest that, along the lines of cases like

5    *Telenor Mobile v. Storm*, that the fine be an escalating fine;

6    that he be given a few days to bring himself into compliance

7    with this Court's order.  After that he should be fined.

8              We had suggested an initial fine of $10,000 per day

9    and then after a brief period of further noncompliance, if that

10   is unfortunately the case, the fine should be doubled.  And

11   after a further similar period it should be doubled again.

12   Because the whole point of a compliance fine is to make it more

13   expensive for the contemnor to defy the court's order than to

14   comply with it.  And he has what appears to be a highly

15   questionable judgment for $9.5 million against Citibank NA, not

16   against Citibank Argentina, and he should be in a position

17   where it is less expensive to comply with this Court's order

18   than to defy it.

19             I will note that this doesn't strip him of a remedy.

20   Citibank NA is right here in New York.  It is without question

21   one of the most solvent entities on earth.  If he wants to try

22   to collect his judgment against the entity that he sued, he's

23   got a lawyer here in New York.  There is a statutory mechanism

24   for attempting to collect that judgment against Citibank, and

25   he should avail himself of that rather than trying to end run

LCHNCITO

this Court's judgment in Argentina.

          And we think that in the interim, because a litigant

to plays games like this -- I mean, he's trying to cut it too

close.  Your Honor gave him some room in the TRO to collect

against Citibank NA in Argentina.  When he discovered that

Citibank NA has no assets in Argentina, he reverted to his plan

of going after Citibank Argentina, precisely which is what was

prohibited.

          On an interim basis we would suggest in addition that

the TRO be expanded to prohibit him from attempting to collect

the judgment in Argentina at all, because otherwise we are

going to be coming back to court every time he tries to thread

the needle and avoid the consequences of this Court's order.

          The final question your Honor asked is whether or not

this is moot.  It is not.  It is within his power to fix this.

He still has to -- as we explained in our last letter to your

Honor, steps have to be taken in Argentina by Mr. De Nevares to

actually effectuate this judgment that he's improperly

obtained.  It's been demanded.  Judgment -- I'm sorry, the case

has been remanded to the trial court for the entry of what

Argentinian law calls I believe a writ of attachment, process

in execution.

          He should certainly be prohibited from taking any

further steps to enforce this improperly obtained order in

Argentina.  It is within this Court's power to do that, and it

LCHNCITO

1    is within his power to withhold that.  Any notion that he is

2    powerless to stop his own improper litigation adventure in

3    Argentina cannot possibly be right.  Even if there were

4    difficulties in that, and there aren't, as Judge Lynch's

5    decision in *Telenor* makes clear, this is a problem of his own

6    making, and if there are difficulties in complying with this

7    Court's order that is not a reason to excuse him.

8            It would be inequitable to say the least to allow

9    Mr. De Nevares to profit from his own wrong and now argue in

10   effect that relief is moot because he has succeeded in

11   defeating for the moment or avoiding the Court's restraint.

12           If anything, your Honor, that calls for a stronger

13   restraint and a more coercive sanction, to make sure that he

14   will bring himself finally into compliance with the order

15   entered in July.

16           I see, your Honor, that my time has expired.  If the

17   Court has any further questions, of course I'm ready to respond

18   to them.

19           Otherwise I thank the Court for its attention.

20           THE COURT:  All right.  Thank you.

21           Mr. Trachten?

22           MR. TRACHTEN:  Thank you, your Honor.

23           THE COURT:  Go ahead.

24           MR. TRACHTEN:  I think in the first instance what we

25   need to focus on is that the TRO expressly excluded from its

LCHNCITO

1   scope any effort to enforce the judgment against Citibank NA

2   directly, and this was an exclusion that was not in the TRO

3   that the petitioner had applied for but was something that your

4   Honor added into that when issuing that.

5          The other thing -- and this is where there's really

6   some obfuscation by Mr. Sills in his presentation of the

7   facts -- under Argentine law the attorneys who represented de

8   Nevares in obtaining the judgment, I'll call them Argentine

9   counsel, have direct interest in the judgment in their own

10  right and have distinct execution rights in connection with

11  those interests.  Neither Citibank NA in the proceeding down in

12  Argentina nor the petitioner in this Court has contested that

13  fact.

14         Now, Argentine counsel have not entered into any

15  arbitration agreement with Citibank NA or any of its affiliated

16  entities.  So the scope of Argentine counsel's enforcement

17  rights is given to the determination of the Argentine courts

18  under Argentine law.

19         Now, what happened here, I think we need to go through

20  very carefully what the proceedings were because, as you will

21  see, there was no effort, which is what the TRO said, there was

22  no effort whatsoever by de Nevares to enforce the judgment

23  against the -- at all, never mind against Citibank Argentina,

24  whatever kind of entity that may be.

25         So what happened was that Argentine counsel obtained

LCHNCITO

1    from a trial court a liquidation, which is a calculation of the

2    amount of the judgment and the interest due on the judgment

3    which it requested in U.S. dollars.  It needed to do that to

4    enforce its own rights because that calculation of the judgment

5    as a whole is what determines what its interest is.

6            Once the liquidation issued and it obtained that

7    liquidation on notice to Citibank NA, once the liquidation

8    issued Citibank, had five days under Argentine law to pay the

9    judgment.  Failing that, Argentine counsel had to write to seek

10   permission to freeze the assets and obtain an order to require

11   that the assets be deposited in a judicial account.

12           That's the rule.  Citibank did not pay Argentine

13   counsel the amount due them under the judgment.  So Argentine

14   counsel sought permission to freeze only to the extent of their

15   own interest an account facially titled to Citibank NA in the

16   central bank directly against Citibank NA.

17           Frankly, although that is not the facts that we have

18   to deal with, we believe that Mr. De Nevares would have had an

19   equal right to seek to freeze the assets of an account titled

20   to Citibank NA in the central bank.  But Mr. De Nevares did not

21   do that because we know that the petitioner is fairly

22   aggressive about these things, and he doesn't want to expend

23   legal fees even successfully fighting a matter.  So he did not

24   do that.

25           Now, Citibank, through counsel, Citibank NA, not

LCHNCITO

1   Citibank Argentina, but Citibank NA through counsel expressly

2   appearing as "in representation of Citibank NA" with its

3   address in the United States, without any appearance by the

4   so-called branch and having some kind of separate juridical

5   existence, it was they who applied to the court to block the

6   bid for permission, permission of counsel for their interest

7   claiming that the assets held in its claim -- and we've showed

8   you the documents showing that it was in its name -- were not

9   its assets and that the judgment should be in pesos.  Argentine

10  counsel opposed NA's application, and the court, agreeing with

11  Argentine counsel, denied Citibank's application.

12          But the decision -- and remember this is just on

13  the -- there's no effort to get any kind of writ of attachment

14  on behalf of de Nevares.  Zero effort.  The decision, while

15  granting permission to freeze, it was ambiguous because it

16  referenced two different rulings.  One had to do with service

17  of process, where the Court suggested that they were separate

18  entities.  That was a trial court.  And then the appellate

19  court decision that said for purposes of the employment they

20  were the same entity, and the Court said be aware of those

21  things.

22          So counsel applied for clarification.  It was not an

23  application that they began.  This was a clarification of a

24  decision made by Citibank NA, not by the branch, because the

25  branch was not a party to any of these.  It did not intervene

LCHNCITO

1    to say these are my assets.  We just had a blanket statement by

2    Citibank NA that says these are not our assets.

3          What happened at the point of clarification is that

4    Argentine counsel is aware of a rule under Argentine law, a

5    procedural rule, that any order that happens in the case, you

6    may lose your right to ever challenge it if you don't make an

7    objection to it within three days.

8          So what we did, it is a matter of defense, is to make

9    sure that if the ruling would be adverse on the issue, and this

10   Court here would, as we hope it will do, dismisses the case

11   here, that Mr. De Nevares would not be barred from ever taking

12   a contrary position to that by reason of a waiver.

13         So those are the facts here.  The fact is there was

14   only an effort, only by Argentine counsel for their interest to

15   enforce the judgment and only against Citibank NA directly.

16   These are the facts.

17         There was no effort by Mr. De Nevares.  If he had made

18   the same efforts, it would have been within the scope of the

19   TRO.  So I think that is our position, subject to any questions

20   that your Honor may have.

21         THE COURT:  No questions at this point.

22         Mr. Sills, a couple of minutes to wrap up your

23   argument.

24         MR. SILLS:  Thank you, your Honor.

25         We are not asking for any relief, your Honor.

LCHNCITO

1          It is a red herring to set up the rights of Mr. De

2     Nevares lawyers in Argentina.  We are not asking for relief

3     against them.  We don't -- they have the rights they have.  We

4     are asking for relief against Mr. De Nevares.  And I think the

5     record is absolutely clear that, through counsel, as one would

6     expect, Mr. De Nevares made an application to the Argentine

7     courts for relief that is expressly prohibited by the TRO.  The

8     order of the Argentine court that I read from before makes that

9     absolutely clear.  It distinguishes applications by the

10     lawyers, applications by what it calls the expert translator

11     and applications by the plaintiff.

12          It says that they will first rule on the plaintiff's

13     motion for clarification.  That is the application that seeks

14     to hold Citibank Argentina and Citibank NA as the same entity,

15     precisely the subject of the TRO.  Nothing that is in the

16     papers that have been submitted to the Court, nothing in the

17     argument we just heard, refutes that.

18          Now, the fact that Mr. De Nevares still has to take

19     additional steps to convert the judgment he got into cash in

20     Argentina it seems to me answers the mootness question, and it

21     is conduct that is restrained and should be restrained.  But

22     the notion that going to court and laying the predicate for

23     that further step is not itself after violation of the TRO

24     makes no sense.

25          It is not only a successful attempt that the restraint

LCHNCITO

| | |
|---|---|
| 1 | that your Honor entered concerns.  It's any attempt.  That is |
| 2 | what the restraint says.  This is clearly an attempt. |
| 3 |         The notion that what is conceded in correspondence |
| 4 | from counsel from Mr. De Nevares here, what is made expressly |
| 5 | clear in the Court's order, an application by Mr. De Nevares to |
| 6 | lay the predicate for going after the assets of Citibank |
| 7 | Argentina is as much a violation of the order as if he had |
| 8 | gotten an Argentine bailiff or court official to go and seize |
| 9 | those assets, because this is the necessary predicate for that. |
| 10 |         It is good, I think, from the standpoint of insuring |
| 11 | compliance with the Court's order that there are steps yet to |
| 12 | be taken by Mr. De Nevares, and it should be clarified that the |
| 13 | restraint applies to those, but he shouldn't be given the |
| 14 | benefit of his improper conduct.  He should be ordered to |
| 15 | withdraw the application that he made, and he should be ordered |
| 16 | to do that under threat of a coercive fine. |
| 17 |         That's the remedy.  He should undo the wrong he has |
| 18 | committed.  I don't think there's the slightest question on the |
| 19 | face of the record here that he has done precisely that which |
| 20 | the Court prohibited. |
| 21 |         THE COURT:  All right.  Thank you. |
| 22 |         MR. TRACHTEN:  May I be heard, your Honor? |
| 23 |         THE COURT:  Very briefly. |
| 24 |         MR. TRACHTEN:  Okay.  If you look at that decision, |
| 25 | you will see that at 6B what it says is that the presentation |

LCHNCITO

1   for the arguments -- the appellant is right, and it is

2   appropriate to know the decision of 11/18/21 with respect to

3   the attachment decree therein by the judge in connection with

4   the expert's fees and the fees of the attorneys.

5          It was not -- the decision that was made was only --

6   was very specific to the attachment decree, and that attachment

7   is only an attachment that was sought by counsel for

8   themselves.

9          Now what Mr. Sills is suggesting is that what he wants

10   to do is have this TRO that allows them to proceed and change

11   the law and not have Mr. De Nevares be able to defend it.

12   Because if he were to withdraw this, he's at risk of never,

13   ever being able to say to or -- I guess if he withdraws it, I

14   guess he could come back on it because it is not adverse to

15   him, but the point is it was not in contempt.

16          This is, as you can see throughout, this was a

17   proceeding directly against Citibank NA, and counsel appeared

18   only for Citibank NA.  It was completely within what your Honor

19   had -- the exclusion that your Honor had in the TRO.  And given

20   the level of certainty of wrongdoing before one can find in

21   contempt, we just think it falls way below the bar of saying

22   that there was some contempt of the Court in doing what was

23   done here.

24          THE COURT:  Thank you.  I am going to close the

25   hearing at this point.  I am persuaded that Mr. De Nevares'

LCHNCITO

1    action in joining the request for clarification in Argentina

2    does violate the provisions of the TRO insofar as the TRO

3    prohibited any effort to enforce the Argentina judgment by

4    Mr. De Nevares.  And in my view the predicate for the request,

5    the argument that Citibank Argentina and CBNA are the same

6    entity is precisely what the TRO did not contemplate and

7    consequently, Mr. De Nevares' joining in the request that is

8    based on that premise in my view is a violation of the terms of

9    the TRO.

10        I will direct Mr. De Nevares to cease such efforts,

11   withdraw from the application.  There might be ways in which

12   under Argentina law Mr. De Nevares could make a withdrawal

13   without prejudice.  I don't know that.  But it appears that

14   that might be a possible way of his addressing the concern that

15   he has about his rights in Argentina.

16        Of course, there is an additional avenue here.  Mr. De

17   Nevares is the subject of an arbitration agreement.  There is

18   absolutely nothing that precludes Mr. De Nevares from

19   proceeding in arbitration.  Citibank has already commenced such

20   a proceeding, and to the extent that Mr. De Nevares has rights

21   to challenge or to enforce the judgment, the arbitration

22   proceeding is the appropriate place to do so.

23        I am going to impose a coercive fine of $10,000 which

24   Mr. De Nevares is directed to pay commencing four business days

25   from today.  That would take us through Tuesday -- or Wednesday

LCHNCITO

1   of next week.  The fine will go into effect on that day, and

2   will increase by $5,000 a day for every three days thereafter

3   that the Mr. De Nevares continues in violation of the TRO.

4          Is there any question concerning the coercive fine?

5          Mr. Sills?

6          MR. SILLS:  Not on behalf of petitioner, your Honor.

7          THE COURT:  Thank you.  Mr. Trachten?

8          MR. TRACHTEN:  My understanding is that he's required

9   to withdraw from that application, and that's what is at issue,

10  that that would avoid the fine?

11         THE COURT:  That is correct.

12         MR. TRACHTEN:  Okay.  I hear you.

13         THE COURT:  All right.  Thank you.

14         Have a good day and a good weekend.

15         MR. TRACHTEN:  Thank you, your Honor.

16         (Adjourned)

17

18

19

20

21

22

23

24

25