

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Robert L. Sills
tel: +1.212.858.1114
robert.sills@pillsburylaw.com

January 4, 2022

**BY ECF**
Hon. Victor Marrero
United States District Judge for
  the Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *The branch of Citibank, N.A. established in the Republic of Argentina v. Alejandro De Nevares*, No. 1:21-cv-06125-VM

Dear Judge Marrero:

In accordance with Your Honor's Order of December 29, 2021 (ECF No. 55), I write on behalf of Petitioner, The branch of Citibank, N.A. established in the Republic of Argentina ("Citibank Argentina"), in response to the letter from counsel for Respondent Alejandro De Nevares, dated December 28, 2021 (the "December 28 Letter"), which asserts that Mr. De Nevares has purged his contempt, and is now in compliance with the Temporary Restraining Order entered in this action on July 31, 2021 (ECF No. 22, the "TRO"), and requests a pre-motion conference in anticipation of filing a motion to dissolve the TRO.

On December 17, 2021, the Court held Mr. De Nevares in contempt of the TRO and imposed an escalating daily coercive fine on Mr. De Nevares, commencing on December 22, 2021 (ECF No. 51, the "Contempt Order"). On December 28, 2021, six days after the deadline for compliance set by the Contempt Order, I wrote to Mr. De Nevares' counsel requesting evidence that Mr. De Nevares had purged his contempt. Later that day, the December 28 Letter was filed. That letter merely states "that Mr. De Nevares, in his own right, timely submitted his withdrawal from the Request for Clarification in the Argentine court. That appellate court has accepted that withdrawal."

In fact, the minutes of the Argentine Appellate Court's proceedings, dated December 21, 2021, which Citibank Argentina has independently obtained, state that the court simply acknowledged receipt of a filing from Mr. De Nevares and not that his withdrawal was "accepted" or otherwise endorsed as an order of the court.[1] We respectfully request that Mr. De Nevares should be

---

[1] The minutes state, in translation, that "Ruling on the writ submitted second: The withdrawal filed by the plaintiff by his own right is deemed presented." Copies of those minutes, in Spanish together with an English translation, are attached at Tabs A1 and A2.

directed to submit proof to this Court that he has brought himself into compliance with the TRO in accordance with the Contempt Order, or pay the coercive fine.

At the same time that Mr. De Nevares asserts that he is in compliance with the TRO and the Contempt Order, his Argentine counsel are pursuing precisely the same relief that the TRO prohibits Mr. De Nevares from seeking. The TRO expressly includes, among the restrained parties, "attorneys" and those "in active concert" with Mr. De Nevares. The notion that Mr. De Nevares does not have the power to instruct his Argentine counsel to comply with this Court's orders appears questionable, at best, although that appears to be his position before this Court. Moreover, even if it is true that Mr. De Nevares' Argentine counsel do have the right, as a matter of Argentine procedure, to act in violation of his express instructions, he should nonetheless be required to make reasonable efforts to cause his Argentine counsel to comply with the TRO, and should give appropriate assurances to the Court that he will not share in any recovery they might make or otherwise benefit from a ruling in their favor. *See Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302–03 (2d Cir. 1999) ("Rule 65(d) is designed to codify the common-law doctrine that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.") (internal quotations omitted).

The December 28 Letter requests that this Court expedite its ruling on Citibank Argentina's motion for a preliminary injunction in order to enable Mr. De Nevares to pursue an appeal, and goes on to suggest that the Court has somehow been remiss in addressing the pending motion as quickly as he would like. While Mr. De Nevares' suggestion that the Court has decided the motion for a preliminary injunction and is now delaying publication of its ruling to prejudice Mr. De Nevares' right to appellate review is both unfounded and highly inappropriate, we take no position on his request to expedite the Court's ruling on the motion for a preliminary injunction or on his alternative argument that the TRO is now an appealable preliminary injunction, other than to note that the matter is fully briefed and ripe for decision, as the Court deems appropriate.

With respect to Mr. De Nevares' contemplated motion to dissolve the TRO pursuant to Fed. R. Civ. P. 65(b)(4), his application is essentially a list of those arguments already briefed and submitted, and his motion should be summarily denied, on the grounds already set forth in Citibank Argentina's moving and reply papers. The only new grounds Mr. De Nevares raises are that the TRO has gone beyond the supposed 14-day limit set out in Rule 65(b) and that this Court should consider the recent decision of the Argentine courts in favor of his attorneys, obtained in violation of the TRO, as grounds for denying relief to Citibank Argentina.[2]

First, as the text of Rule 65(b) provides, the time limit on the duration of a temporary restraining order applies only to those issued without notice. Fed. R. Civ. P. 65(b)(2); *see Bonechi v. Irving Weisdorf & Co.*, 1995 WL 731633, at *2 (S.D.N.Y. Dec. 8, 1995) ("[The] limitation on the effectiveness of a temporary restraining order clearly applies to those orders that are granted ex parte. There is no indication in Rule 65(b) that temporary restraining orders granted with notice to the defendant also must expire.").[3] In any event, by waiting months to raise this argument,

---

[2] Citibank N.A. has sought further appellate review of that ruling.
[3] Citibank Argentina acknowledges that some courts in other circuits have reached a contrary conclusion, and have applied the 14-day deadline to temporary restraining orders granted with notice, but submits that *Bonechi* states the better view.

Mr. De Nevares has waived it; indeed, he did not so much as hint at this argument in his opposition to the contempt motion.

Second, Mr. De Nevares is attempting to use the fruits of his contempt, a ruling from the Argentine courts on an issue he and those acting in concert with him were enjoined from raising outside of the arbitration to which he agreed, to support his arguments that Citibank Argentina and Citibank N.A. are the same entity. It would be inequitable, to say the least, to allow him to benefit from a ruling of the Argentine courts obtained in violation of the TRO. In any event, the weight, if any, to be given to that ruling is a question for the arbitrators because the dispositive issue here is the arbitrability of the dispute under Chapter 3 of the Federal Arbitration Act, 9 U.S.C. §§ 301, *et seq*. To the extent that the underlying merits of the dispute are at issue here, the resignation and release Mr. De Nevares signed when he accepted his new and far more remunerative position in New York expressly acknowledged that Citibank Argentina and Citibank N.A. were separate entities, stating "I furthermore understand and accept that Citibank, N.A. New York Branch is a different employer and, consequently, I will have no right to claim from Citibank N.A. Branch established in the Republic of Argentina any item or difference or indemnity that may result as a consequence of, or in relation to, my labor relationship with Citibank, N.A. New York Branch or the termination thereof." ECF No. 11, Ex. 2 at 4. His present position is a blatant attempt to repudiate both that acknowledgment and his agreement to arbitrate any disputes with Citibank Argentina.

The December 28 Letter attempts to make much of the fact that in the Argentinian case Citibank N.A. contested the attachment of the assets held by Citibank Argentina at the Argentine Central Bank. In that case, Citibank N.A. submitted evidence from Citibank Argentina that the accounts held at the Argentine Central Bank that Mr. De Nevares and those acting in concert with him are attempting to seize were held under the "Unique Tax Identification Number" for Citibank Argentina, and that Citibank N.A. "does not have a Unique Tax Identification Number" nor does it "have an open bank account at the Central Bank of the Argentine Republic." ECF No. 47.2, Ex. B at 4. That evidence is entirely consistent with Citibank Argentina's case here, and is, like Mr. De Nevares' other attempts to argue the underling merits, a matter for the arbitrators and not for this Court.

Finally, Citibank Argentina will request that the Court exercise its discretion and award Citibank Argentina its attorneys' fees and costs incurred in bringing and prevailing on its contempt motion. *See Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 147 (2d Cir. 2001); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2021 WL 3418475, at *17 (S.D.N.Y. Aug. 5, 2021); *Chase Bank USA., N.A. v. M. Harvey Rephen & Assocs., P.C.*, No. 1:19-mc-275 (GHW), 2020 WL 1911185, at *3-4 (S.D.N.Y. Apr. 20, 2020). Citibank Argentina is prepared to address that at the conference that Mr. De Nevares has requested or to address it in a separate pre-argument letter, as Your Honor directs.

Respectfully,

Robert L. Sills