UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/13/2022
```

------------------------------------X

THE BRANCH OF CITIBANK, N.A.  :
ESTABLISHED IN THE REPUBLIC   :
OF ARGENTINA                  :
                Plaintiff, :
                           :
                           :   21 Civ. 6125 (VM)
   - against -   :
                           :
ALEJANDRO DE NEVARES,         :   **DECISION AND ORDER**
                           :
                Defendant. :

------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Petitioner The branch of Citibank, N.A. established in the Republic of Argentina ("Citibank Argentina") brings this action against Alejandro De Nevares ("De Nevares") seeking an order compelling De Nevares to arbitrate his claim against Citibank Argentina, as well as an injunction restraining De Nevares from commencing or prosecuting any action or attempting to enforce any judgment against Citibank Argentina obtained in litigation in Argentina regarding claims involving the matters at issue in the proceedings now before this Court. (See "Petition," Dkt. No. 1 ¶ 37.)

Pending the Court's determination of the Petition, Citibank Argentina applied to this Court for a temporary restraining order and preliminary injunction to enjoin De Nevares from taking any action affecting the merits of the

1

parties' underlying dispute in this litigation. (See Dkt. No. 5.) Having heard oral argument and having reviewed and considered the Petition, the Court issued a temporary restraining order (the "TRO") pending the resolution of Citibank Argentina's motion for a preliminary injunction. (See Dkt. No. 22 at 2.)

Now before the Court is Citibank Argentina's Petition, as well as De Nevares's motion to dismiss the Petition ("Motion to Dismiss"), (see "Resp. Mem.," Dkt. No. 27), and De Nevares's motion to dissolve the temporary restraining order ("Rule 65(b) Motion"). (See Dkt. No. 54, 58-59.)[1] For the reasons set forth below, Citibank Argentina's Petition is GRANTED. De Nevares's Motion to Dismiss is DENIED, and his Rule 65(b) Motion is DENIED as moot.

## I.   BACKGROUND

### A. FACTUAL BACKGROUND[2]

Citibank Argentina is a registered branch of Citibank, N.A. ("CBNA") with its legal address in Buenos Aires,

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion).

[2] Except as otherwise noted, the factual background derives from the facts pleaded within Citibank Argentina's Petition and memorandum of law in support of its Petition. (See "Petition Mem.," Dkt. No. 6). Except when specifically quoted, no further citation will be made to these documents or the documents referred to therein.

Argentina. Citibank Argentina holds a banking license granted by the Central Bank of Argentina, which regulates Citibank Argentina as an entity separate from CBNA and subject to the same Argentine laws and regulations that apply to any other local bank. Citibank Argentina is also individually registered with Argentina's National Securities Commission, which allows Citibank Argentina to act as an agent in the local capital markets. Pursuant to Argentine law, Citibank Argentina provides notice to its customers specifying that, despite it being a branch of a foreign banking entity, that entity (CBNA) is not liable for the obligations of Citibank Argentina. As a matter of Argentine law, Citibank Argentina, though a branch of CBNA, has the capacity to sue and be sued in its own name.

De Nevares is a former employee of both Citibank Argentina and CBNA. De Nevares worked at Citibank Argentina from 1992 until 1994. From 1994 to 2003, De Nevares worked at Citicorp Capital Markets, Inc. ("CCM"), also located in Buenos Aires. In 2003, De Nevares voluntarily resigned from CCM and accepted a position at CBNA in New York. As part of his resignation process, De Nevares signed a resignation and release statement which, in relevant part, stated:

I furthermore understand and accept that Citibank, N.A. New York Branch is a different employer and, consequently, I will

have no right to claim from Citibank N.A. Branch established
in the Republic of Argentina any item or difference or
indemnity that may result as a consequence of, or in relation
to, my labor relationship with Citibank, N.A New York Branch
or the termination thereof.

("Resignation and Release," Dkt. No. 11-2.)

Further, in accepting his position with CBNA, De Nevares

executed an employment agreement (the "Employment

Agreement," Dkt. No. 1-1) which contained the following

arbitration clause:

[De Nevares] agree[s] to follow our dispute
resolution/arbitration procedure for resolving all disputes
based on legally protected rights (i.e., statutory,
contractual or common law rights) that may arise between you
and Citigroup Inc. or its parent affiliates, officers,
directors, employees and agents. This applies while you are
employed with us as well as after your employment ends . . .
you and the Firm agree to submit the dispute, within the time
provided by applicable statute(s) of limitations, to binding
arbitration before the arbitration facilities of the National
Association of Securities Dealers Inc. ("NASD") or where the
NASD declines to use its facilities, before the American
Arbitration Association, in accordance with the arbitration
rules of that body then in effect and as supplemented by the
Employment Arbitration Policy.

("Arbitration Agreement," Dkt. No. 11-4).

In 2007, De Nevares was terminated by CBNA as part of a

reduction in work force, and he returned to Argentina. De

Nevares informed Citibank Argentina that he was prepared to

resume working for the company, but Citibank Argentina

apparently did not rehire him. In 2009, De Nevares sued CBNA

in Argentine Labor Court asserting a claim for constructive dismissal under Argentine labor law.

Citibank Argentina claims that, for tactical purposes, it was not sued, likely because of the Resignation and Release signed by De Nevares, but nonetheless Citibank Argentina was erroneously served in De Nevares's Labor Court action. Counsel for Citibank Argentina made a special appearance in the Argentine Labor Court action to contest service of process, and ultimately service was quashed because the Labor Court found Citibank Argentina was a separate party from CBNA and not a party to De Nevares's litigation against CBNA. In 2018, the Argentine trial court dismissed De Nevares's claim against CBNA, holding that De Navares's employment relationship with CBNA was governed by New York law.

In May 2021, the Argentine Court of Appeals reversed that ruling in a proceeding entitled DE NEVARES ALEJANDRO C/ CITIBANK N.A. s/ DESPIDO (File No. 45931/09). The Argentine Court of Appeals held that Argentine law provided De Nevares with a cause of action against CBNA and entered judgment in his favor for approximately $9.5 million, with interest continuing to accrue (the "Judgment"). On June 30, 2021, the Argentine Court of Appeals denied CBNA's Extraordinary Recourse to the National Supreme Court of Argentina. CBNA has

pursued a further appeal to Argentina's National Supreme Court, but the Judgment against CBNA remains executable.

Following the entry of the Judgment in Argentina, it appeared to Citibank Argentina that De Nevares was "virtually certain" to attempt to collect his Judgment against CBNA from Citibank Argentina through litigation in Argentina. Citibank Argentina filed its Petition in this Court on the basis that De Nevares is bound, by the Arbitration Agreement, to pursue solely through arbitration any claims he may have against Citibank Argentina relating to the termination of his CBNA employment. On the same day that Citibank Argentina filed its Petition, Citibank Argentina filed a Demand for Arbitration and Complaint with the American Arbitration Association ("AAA"). (See Dkt. No. 8-1.) The underlying substance of this Demand, which is not at issue before the Court, is that the Resignation and Release precludes De Nevares from collecting from Citibank Argentina or any of its assets stemming from his Judgment against CBNA rendered in the Argentina litigation.

B. PARTIES' ARGUMENTS

Citibank Argentina argues that the Court should compel De Nevares to arbitrate his claims because a valid arbitration agreement covering his claims exists and De Nevares has

manifested an unambiguous intent not to arbitrate. (See Petition Mem. at 28-31.) Further, Citibank Argentina contends that the Court should enjoin De Nevares from commencing or prosecuting any proceeding against Citibank Argentina in Argentina, in light of the parties' unequivocal agreement to arbitrate. (See id. at 15-28.)

De Nevares moves to dismiss Citibank Argentina's Petition on the following grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and Rule 17(b) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)" and "Rule 17(b)") because, as a branch of a bank, Citibank Argentina lacks standing and capacity to sue; (2) dismissal is warranted in exercise of the Court's discretion pursuant to the doctrine of forum non conveniens;[3] and (3) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") on the basis that Citibank Argentina has failed to prove the existence of a valid arbitration agreement or entitlement to

---

[3] De Nevares states in his Notice of Motion (Dkt. No. 27) that his Motion to Dismiss is submitted pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), (6), and 17(a)(1) and (b). The Court, however, fails to find arguments put forth by De Nevares concerning Rule 17(a)(1) and improper venue under Rule 12(b)(3). De Nevares did argue, however, that the petition should be dismissed on the ground of forum non conveniens, which is a separate and distinct matter from improper venue, as the doctrine rests on the inherent authority of the federal court. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).

an injunction. (See Opp. Mem. at 10-32.)

## II. MOTION TO DISMISS FOR LACK OF JURISDICTION

Before addressing Citibank's Petition, the Court must address De Nevares's challenge to jurisdiction because, absent authority to adjudicate, the Court lacks a legal basis to grant any relief or consider the action further. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Can v. United States, 14 F.3d 160, 162, n.1 (2d Cir. 1994) ("[I]n most instances the question whether a court has subject-matter jurisdiction is, conventionally and properly, the first question a court is called on to consider.").

De Nevares argues that Citibank Argentina lacks both standing and capacity to sue because Citibank Argentina is merely a branch of CBNA, and as such, lacks legal existence. Although capacity to sue is "allied with . . . the question of standing," capacity to sue is a conceptually distinct inquiry that is non-jurisdictional in nature. Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 382 (2d Cir. 2021) (quoting 59 Am. Jur. 2d Parties § 26). Accordingly, the Court addresses first the jurisdictional question of Citibank Argentina's legal existence.

A. LEGAL STANDARD

The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case. See Makarova, 201 F.3d at 113. As also applies to a Rule 12(b)(6) motion, a court deciding a motion to dismiss for lack of subject matter jurisdiction accepts all material factual allegations in the complaint (or petition) as true and construes any doubts or ambiguities in favor of the party asserting jurisdiction. See Fund Liquidation, 991 F.3d at 379 (citing Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56-57 (2d Cir. 2016)).

B. DISCUSSION

A plaintiff's legal existence is a prerequisite to constitutional standing. While federal law "sets the ground rule that a plaintiff . . . must have legal existence to have constitutional standing," whether a particular plaintiff "satisfies that requirement . . . turns on an examination of state law." Fund Liquidation, 991 F.3d at 386. Here, Citibank Argentina is registered in Argentina and regulated by Argentine laws. (See "Pertiné Decl.," Dkt. No. 7 ¶ 4.) This means that regardless of how United States domestic law treats bank branches for standing purposes, Citibank Argentina's

9

legal existence turns on Argentine law. See Fund Liquidation, 991 F.3d at 386 (applying Cayman Islands law to determine legal existence of plaintiff corporation); Roby v. Corp. of Lloyd's, 796 F. Supp. 103, 106-07 (S.D.N.Y. 1992) (applying English law to determine legal existence of syndicates of insurer-investors); see also DHIP, LLC v. Fifth Third Bank, No. 19 Civ. 2087, 2021 WL 4481118, at *5 (S.D.N.Y. Sept. 30, 2021) (explaining legal existence is "determined by reference to the law under which [plaintiff] was created").

The record before the Court indicates that under Argentine law, Citibank Argentina exists as a legal entity empowered to sue and be sued and therefore has standing to pursue its Petition. Several factors militate in favor of this finding.[4] First, according to Citibank Argentina's General Counsel, Nicolás Pertiné ("Pertiné"), Citibank Argentina is registered with the Office of Corporations in the city of Buenos Aires, which regulates local corporations. (See Pertiné Decl. ¶ 4.) Citibank Argentina is also licensed by and regulated by the Central Bank of Argentina as a

---

[4] The Court acknowledges that other courts have held United States *domestic* bank branches do not have standing to sue under particular circumstances, see, e.g., Greenbaum v. Svenska Handlesbanken, 26 F. Supp. 649, 652-53 (S.D.N.Y. 1998), but based upon the record in this case, Argentine law differs substantially from United States domestic law in its treatment of bank branches.

separate entity. (See id. ¶ 5.) Pursuant to this license,
Citibank Argentina is treated as any other local bank, subject
to banking regulations and capital and reserve requirements.
(See id. ¶ 6.) Further, Citibank Argentina is registered with
Argentina's National Securities Commission, authorizing it to
serve as an agent in local capital markets. (See id. ¶ 7.)
This means that even though Citibank Argentina is a branch of
another banking entity, it can serve as an issuer or
underwriter of securities independently of CBNA. Citibank
Argentina also provides notice that it cannot be held liable
for the legal obligations of CBNA. (See id. ¶ 8.) Together,
these circumstances persuade the Court that, for the purposes
of the standing inquiry in this action, Argentine law would
consider Citibank Argentina as a legal entity.

In reaching this conclusion the Court has considered De
Nevares's expert declaration. De Nevares's expert, Alfredo L.
Rovira ("Rovira"), states that under Argentine law a branch
is not a separate entity from its parent, but he goes on to
discuss examples in which branches had separate status from
their parent companies and "certain juridical autonomy." (See
"Rovira Dec.," Dkt. No. 30 ¶¶ 18, 21-25.) Rovira also notes
the National Commercial Appellate Court in Argentina
"expressly rule[d]" that Citibank Argentina and CBNA were one

entity, "dismissing the allegation that the parent and its Argentine branch could be treated as separate and distinct juridical persons." (See id. at 7 n.4.)

The judicial decision Rovira references, however, examined whether CBNA and Citibank Argentina were different entities for purposes of enforcing a promissory note. (See id.) As is the case under United States domestic law,[5] Argentine law may treat branches as separate entities under certain circumstances. Here the Court is not deciding liability in a dispute over a promissory note, but rather standing in a dispute over an arbitration agreement.

Ultimately, in deciding a question of foreign law, the Court "may reject the opinion of an expert on foreign law or give it whatever probative value the court believes it deserves." IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc., No. 14 Civ. 3443, 2015 WL 1516631, at *3 (S.D.N.Y. Mar. 26, 2015), aff'd, 634 F. App'x 19 (2d Cir. 2015) (quoting Argonaut P'ship, L.P. v. Bankers Tr. Co., No. 96 Civ. 1970, 1997 WL 45521, at *9 (S.D.N.Y. Feb. 4, 1997)). "[T]he responsibility for correctly identifying and applying foreign

---

[5] The Court acknowledges, without applying, New York's separate entity rule, which recognizes bank branches may exist as separate and distinct entities for certain purposes. See Motorola Credit Corp. v. Standard Chartered Bank, 21 N.E.3d 223, 226-27 (2014).

law rests with the court." Id. (quoting Rationis Enters. Inc.
of Pan. v. Hyundai Mipo Dockyard Co., 426 F.3d 580, 586 (2d
Cir.2005)). The Court finds, in its discretion, Pertiné's
expert interpretation of Argentine law on this matter more
persuasive than Rovira's expert interpretation.

Moreover, in De Nevares's underlying lawsuit in
Argentina regarding the parties' dispute, DE NEVARES
ALEJANDRO C/ CITIBANK N.A. s/ DESPIDO, the Labor Court found
that Citibank Argentina was not a proper defendant for service
of process. (See Petit. Mem. at 26.) That ruling suggests
that, at the very least, under Argentine law Citibank
Argentina possesses the capacity to sue and be sued
independently of an action brought against CBNA. Although
capacity to sue is not dispositive of legal existence, the
concepts are overlapping. See Fund Liquidation, 991 F.3d at
382-83.

An additional consideration that weighs heavily on the
Court's decision is that at the core of this action is a valid
arbitration agreement[6] that applies to the dispute. Federal
law strongly favors resolving disputes by giving effect to
valid arbitration agreements. See AT & T Mobility LLC v.

---

[6] See infra Section IV.

<u>Concepcion</u>, 563 U.S. 333, 346 (2011) (finding the Federal Arbitration Act "embod[ies] [a] national policy favoring arbitration") (quoting <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006)). This policy also counsels in favor of not dismissing this action at this stage.

Because De Nevares challenges Citibank Argentina's capacity to bring the present action, this concept warrants further consideration. Where a corporation exists under foreign law,[7] capacity to sue is determined by the law under which the corporation was organized, which for Citibank Argentina is Argentine law. <u>See</u> Fed. R. Civ. P. 17(b)(2)); (Pertiné Decl. ¶ 4.) Pertine states that "[a]s a matter of Argentine law, Citibank Argentina has the capacity to sue and be sued in its own name." (<u>Id.</u> ¶ 8.)  Rovira does not contest this statement of law. Accordingly, the Court finds that Citibank Argentina has capacity to maintain this action.

In sum, De Nevares's Motion to Dismiss on the basis that Citibank Argentina lacks legal existence or the capacity to sue is DENIED.

---

[7] Because Citibank Argentina is registered with the Office of Corporations in the city of Buenos Aires, a body that registers and regulates local corporations, (<u>see</u> Pertiné Decl. ¶ 4), the Court considers Citibank Argentina a corporation organized under Argentine law for purposes of determining its capacity to sue.

### III. <u>MOTION TO DISMISS FOR FORUM NON CONVENIENS</u>

De Nevares also moves to dismiss the Petition on forum non conveniens grounds. (Resp. Mem. at 24-26.) The balance of public and private interests counsel against dismissal of this action under forum non conveniens doctrine.

A. <u>LEGAL STANDARD</u>

Pursuant to the forum non conveniens doctrine, the Court "assesses the appropriateness of litigating the action in the plaintiff's choice of forum, as opposed to the alternative venue, by balancing the private interests of the litigants and the public interest concerns of the court." <u>Turedi v. Coca Cola Co.</u>, 460 F. Supp. 2d 507, 521 (S.D.N.Y. 2006), <u>aff'd</u>, 343 Fed. App'x 623 (2d Cir. 2009). As part of this balancing test, the Court considers any public or private hardships. Such hardships may include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses." <u>Aguinda v. Texaco, Inc.</u>, 303 F.3d 470, 479 (2d Cir. 2002) (citation omitted).

B. <u>DISCUSSION</u>

To justify dismissal on forum non conveniens grounds, De Nevares argues that Citibank Argentina has no meaningful link to this jurisdiction because the Petition does not relate to

15

De Nevares's employment in New York, but rather to De Nevares's attempt to enforce the Judgment against Citibank Argentina in Argentina. (See Resp. Mem. at 25.) De Nevares proposes that this Court would be burdened by deciphering and applying Argentine law and questions "[w]hat possible interest . . . the Southern District of New York [could] have in De Nevares's efforts to enforce his Judgment." (Id.)

The answer to that question is simple: this action revolves around enforcement of an arbitration agreement, executed in New York, made in connection with De Nevares's employment in New York by a corporation doing business in New York, and federal policy has a strong preference for resolving disputes by giving effect to valid arbitration agreements, particularly in international disputes. See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 654 (2d Cir. 2004); see also Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("It is difficult to overstate the strong federal policy in favor of arbitration."); Travelport Global Distrib. Sys. B.V. v. Bellview Airlines Ltd., No. 12 Civ. 3483, 2012 WL 3925856, at *7 (S.D.N.Y. Sept. 10, 2012) ("[Federal] policy in support of arbitration is exceptionally strong."). The public interest

16

in enforcing valid arbitration agreements weighs heavily against dismissal.

The hardships De Nevares puts forth do not tip the scale. As evidenced below, there is no need for this Court to apply Argentine law to determine that De Nevares entered into a valid arbitration agreement in the United States. Additionally, De Nevares does not specify, and the Court does not find, that any other documents or testimony are required to decide this matter. The Court is unpersuaded that any expense would be spared, or inefficiency remedied, by having this case proceed in De Nevares's proposed alternative forum of Argentina.[8]

Given the type of evidence in this case, and the strong public interest in enforcing valid arbitration agreements, the Court finds that despite the international nature of this dispute, the balance of public and private interests in this action counsel against dismissal. Therefore, the Court denies De Nevares's motion to dismiss this action on forum non conveniens grounds.

### IV.   **PETITION TO COMPEL ARBITRATION**

Having resolved the threshold questions of jurisdiction

---

[8] Argentina is an especially inappropriate forum because arbitration agreements concerning employment disputes are unlawful under Argentine law. (See Resp. Mem. at 24.)

and forum, the Court turns to Citibank Argentina's Petition to compel De Nevares to arbitrate, pursuant to the Inter-American Convention on International Commercial Arbitration, Jan. 30, 1975, 104 Stat. 448, 14 I.L.M. 336 (the "Convention"), and  its implementing legislation, Chapter Three of the  Federal Arbitration Act ("FAA"), 9 U.S.C. § 301, et seq., in particular 9 U.S.C. § 303. "An arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202.  Arbitration agreements arising out of employment contracts are one such "legal relationship" subject to 9 U.S.C. Section 202. See E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

A. LEGAL STANDARD

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." Preston v. Ferrer, U.S. 346, 349 (2008). Section 4 of the FAA provides "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Therefore, in a motion to compel arbitration, "the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003) (quoting PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)). If these requirements are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration." Dean Whitter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

To determine the validity of an agreement, "courts should apply ordinary state-law principles that govern the formation of contracts." Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The party moving to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that

19

agreement in issue." Hines v. Overstock.com, Inc., 380 F. App'x 22, 23 (2d Cir. 2010). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 114 (2d Cir. 2010). "Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact." Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012).

B. DISCUSSION

It is well-settled law that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). While the "general presumption is that the issue of arbitrability should be resolved by the courts," the presumption "may be overcome by clear and unmistakable evidence that the parties intended to arbitrate issues of arbitrability." WTA Tour, Inc. v. Super Slam Ltd., 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018) (quoting All. Bernstein Inv. Rsch. & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006)). But a threshold question that

20

a court must decide is whether the parties clearly agreed to arbitrate questions regarding the scope of the arbitration agreement. See VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P., 717 F.3d 322, 326 (2d Cir. 2013). Where the agreement "explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as a clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Shaw Grp. Inc., 322 F.3d at 122.

Relying on the holding in Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc., 349 F. App'x 551 (2d Cir. 2009), De Nevares contends that "the Court cannot possibly determine the scope of the agreement to arbitrate -- most importantly, the issue of arbitrability itself" because Citibank Argentina submitted an incomplete agreement, rending the Arbitration Agreement unenforceable. (See Resp. Mem. at 20-21.)

The Arbitration Agreement states, in relevant part, that disputes will be submitted to binding arbitration "before the American Arbitration Association, in accordance with the rules of that body then in effect and as supplemented by the Employment Arbitration Policy." Citibank Argentina originally omitted the "Employment Arbitration Policy" cited in the otherwise complete Arbitration Agreement, but eventually

21

submitted the Policy with its Reply papers. (See Dkt. No. 37-2 at 48-52.) The AAA rules incorporated in the Arbitration Agreement delegate all arbitrability questions to the arbitrators.[9]

In Dreyfuss, the court found that despite a presumption in favor of arbitration, the arbitration agreement could not be enforced because the former employer seeking to enforce the agreement had failed to establish the employee's assent to a range of essential terms. See 349 F. App'x at 555 (applying New York contract law). The former employer had submitted only two pages of the parties' agreement. One page contained a broad arbitration clause that stated: "Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit .  . . ." Id. at 553. Despite further discovery, the former employer was unable to produce a complete agreement. With only two pages in the record, the Dreyfuss court found the contract unenforceable since it could not determine "an

---

[9] It is of no significance whether the AAA rules reference the AAA International Dispute Resolution Procedures (the "IDR Rules" or the AAA Employment Arbitration Rules (the "Employment Rules") because both sets of rules contain a delegation provision. Compare IDR Rules § 21(1-2), https://www.icdr.org/sites/default/files/document_repository/ICDR_Rules _1.pdf?utm_source=icdr-website&utm_medium=rules-page&utm_campaign=rules -intl-update-1mar, with Employment Rules § 6(a-b) https://www.adr.org/ sites/default/files/EmploymentRules_Web_2.pdf.

entire range of matters relevant to the conduct of arbitration proceedings." Id. at 554.

The circumstances in this action differ significantly from those in Dreyfuss. Aside from the fact that Citibank Argentina has produced the Policy for the Court's review, the Policy does not constitute an essential term -- the language of the Arbitration Agreement makes clear that the Policy is a supplement to the AAA rules, rather than an exception. The Arbitration Agreement without the Policy does not compare to the lack of terms present in Dreyfuss. Most importantly, the Agreement incorporates the AAA rules, which inform the Court that the parties agreed to delegate questions of arbitrability to the arbitrators. To be certain, a review of the Policy does not reveal any contradiction to the AAA delegation provision.

The Second Circuit has squarely held that the explicit incorporation of the AAA rules, as evidenced here, serves as "clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitration." Contec Corp. v. Remote Sol. Co., Ltd., 398 F.3d 205, (2d Cir. 2005); see also Shaw Grp., 322 F.3d at 122; PaineWebber, 81 F.3d at 1202. This incorporation prevents the Court from considering De Nevares's remaining challenges to the scope of the Agreement

23

and jurisdiction of the arbitrators.[10] See <u>Henry Schein, Inc.</u> <u>v. Archer & White Sales, Inc.</u>, 139 S. Ct. 524, 530 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."). These questions must be resolved in arbitration.

Having found a valid agreement to arbitrate exists, the remaining question is "whether one party to the agreement has failed, neglected or refused to arbitrate." <u>LAIF X SPRL v.</u> <u>Axtel, S.A. de C.V.</u>, 390 F.3d 194, 198 (2d Cir. 2004). A party has refused to arbitrate if he "commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so." <u>Jacobs v. USA Track & Field</u>,

---

[10] Two of De Nevares's challenges warrant discussion. First, where a signatory to an arbitration agreement which incorporates a delegation provision seeks to avoid arbitration, a court need not "reach the questions whether [signatory] is estopped from avoiding arbitration with [non-signatory]," because that is an issue for the arbitrator to resolve. See <u>Contec Corp.</u>, 398 F.3d at 208. Second, litigation-conduct waiver is inapplicable here. Aside from the fact that "[t]he Second Circuit [has] not . . . squarely addressed the question of whether litigation-conduct waiver is an issue to be decided by an arbitrator," Citibank Argentina has not participated in litigation on the merits of the dispute. <u>LG</u> <u>Elecs., Inc. v. Wi-LAN USA, Inc.</u>, No. 13 Civ. 2237, 2014 WL 3610796, at *3 n.3 (S.D.N.Y. July 21, 2014), <u>aff'd</u> 623 F. App'x 568 (2d Cir. 2015). Neither Citibank Argentina's appearance to contest service in Argentina, nor Citibank Argentina's Petition in this Court constitute a waiver of its right to arbitrate. See <u>Murray v. UBS Sec., LLC</u>, No. 12 Civ. 5914, 2014 WL 285093, at *6 (S.D.N.Y. Jan. 27, 2014) (collecting cases finding that defendant's motion to compel arbitration does not itself result in waiver).

374 F.3d 85, 88 (2d Cir. 2004) (quotation marks and citation omitted). De Nevares contends that the holding in LAIF X SPRL v. Axtel, in which the court found that the respondent's foreign lawsuit was not an attempt to sidestep arbitration, determines the matter at bar. (See Resp. Mem. at 32).

De Nevares's reliance on LAIF, however, is misplaced. Unlike the dispute in LAIF, in this action De Nevares has not "submitted [himself] to the arbitral forum, exercised [his] right in that forum to assert a procedural defense, and invoked the discretion of that arbitral forum to stay proceedings in deference to the [Argentine] court on a point of [Argentine] law." LAIF, 390 F.3d at 200. Although the dispute here has been submitted to arbitration, De Nevares nevertheless has attempted to participate in litigation to enforce his Judgment in Argentina. (See Dkt. No. 51 (holding De Nevares in contempt for violating language of TRO).) In addition to these factors, contrary to the finding in LAIF, the anticipated litigation here does not involve an issue that "bears on standing to arbitrate." LAIF, 390 at 199.

Further, De Nevares has unquestionably "manifest[ed] an intention not to arbitrate the subject matter of the dispute." LAIF, 390 F.3d at 198 (quoting PaineWebber Inc v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995)). Aside from De Nevares

25

previously attempting to commence litigation against Citibank Argentina in Argentina, (see Petition Mem. at 26), De Nevares's present motion papers demonstrate his intent. De Nevares states that he has a right "in accordance with Argentine law to enforce his Argentine court Judgment against [Citibank Argentina] in Argentina." (Resp. Mem. at 14.) He adds that he has waited fourteen years for this Judgment, and he hopes to "enforce it expeditiously and economically in Argentina." (Id. at 31.) These factors taken together demonstrate Nevares's manifest intent not to arbitrate.

In sum, the Court concludes that De Nevares has an obligation to resolve his dispute against Citibank Argentina in arbitration. See Lapina v. Men Women N.Y. Model Mgmt. Inc., 86 F. Supp. 3d 277, 283-84 (S.D.N.Y. 2015) ("[A] party who 'signs a contract containing an arbitration clause and incorporating by reference the AAA rules . . . cannot [later] disown its agreed-to obligation to arbitrate all disputes[.]'" (citation omitted)). Citibank Argentina's motion to compel arbitration is GRANTED.

### V.   **PETITION FOR ANTI-SUIT INJUNCTION**

In addition to asking the Court to compel De Nevares to arbitrate, Citibank Argentina also seeks to enjoin De Nevares from pursuing any further litigation against Citibank

26

Argentina and from attempting to enforce his Judgment against it in any forum other than arbitration. De Nevares argues that Citibank Argentina mischaracterizes its requested relief because there is no suit to enjoin, and nevertheless, Citibank Argentina has failed to demonstrate entitlement to preliminary injunctive relief. (<u>See</u> Resp. Mem. at 26-32.)

A. <u>LEGAL STANDARD</u>

"It is beyond question that a federal court may enjoin a party before it from pursuing litigation in a foreign forum." <u>Paramedics Electomedicina</u>, 369 F.3d at 652. "But principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" <u>Id.</u> (quoting <u>China Trade & Dev. Corp. v. M.V. Choong Yong</u>, 837 F.2d 33, 35 (2d Cir. 1987)).

To demonstrate entitlement to an anti-suit injunction against foreign litigation, two threshold requirements must be met: "(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." <u>Karaha Boda Co. v. Peusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 500 F.3d 111, 119 (2d Cir. 2007) (quoting <u>Paramedics Electomedicina</u>, 369 F.3d at 652)).

27

Once these threshold requirements are satisfied, the court must weigh five factors, "including whether the parallel litigation would: (1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment." Keep on Kicking Music, Ltd. v. Hibbert, 268 F. Supp. 3d 585, 590 (S.D.N.Y. 2017). These five factors are known as the "China Trade" factors. See China Trade, 837 F.2d at 35.

Ultimately, the party seeking an anti-suit injunction must meet the ordinary requirements for a preliminary injunction as well. The moving party "must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." No. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018).

B. DISCUSSION

At bottom, Citibank Argentina seeks to enjoin De Nevares from commencing litigation or otherwise enforcing the Judgment against Citibank Argentina other than through the

28

parties' agreed upon forum of arbitration. (See Petition Mem. at 25-28.) As the Court understands from Citibank Argentina's motion papers, at this time Citibank Argentina is not seeking to enjoin De Nevares from *ever* enforcing the Judgment.[11] Rather, Citibank Argentina seeks to enjoin De Nevares from enforcing the Judgment against Citibank Argentina or any of its assets pending arbitral review of the enforceability of the Judgment against Citibank Argentina. Because at present there is no pending proceeding brought by De Nevares against Citibank Argentina, there is no suit for this Court to enjoin.[12]

Citibank Argentina mischaracterizes the relief it seeks by asking this Court to impose an anti-suit injunction. Cf. Naranjo, 667 F.3d at 243 ("China Trade anti-suit injunctions are imposed where the same parties attempt to litigate the

---

[11] If this were the case, the requested relief would be an "anti-enforcement injunction," which the Second Circuit has strongly cautioned against granting. See Chevron Corp. v. Naranjo, 667 F.3d 232, 233-44 (2d Cir. 2012) ("[A]n 'anti-suit injunction' . . . is, in reality, an *anti-enforcement* injunction . . . when a court in one country attempts to preclude the courts of every other country from *ever* considering the effect of that judgment.") (second emphasis added). Instead, the relief Citibank Argentina requests would not prevent De Nevares from attempting to (1) enforce his judgment against CBNA in New York under N.Y. C.P.L.R. Article 53 or (2) enforce his judgment against Citibank Argentina in AAA arbitration.

[12] Citibank Argentina does not, and could not, seek an anti-suit injunction against the underlying employment dispute against CBNA that has already been decided in De Nevares's favor.

same underlying dispute in multiple fora, often in a so-called 'race for res judicata.'") (citation omitted); see also, Paramedics Electomedicina, 369 F.3d at 649 (parallel litigation initiated in Brazil); Karaha Bodas Co., 500 F.3d at 113 (parallel litigation initiated in Cayman Islands). The proper procedural remedy here, which Citibank Argentina also requests,[13] is preliminary injunctive relief restraining De Nevares from taking action contrary to the parties' arbitration agreement pending arbitral review of the dispute.

"The Second Circuit has repeatedly held that courts retain the power, and the responsibility, to consider applications for preliminary injunctions while a dispute is being arbitrated." General Mills, Inc. v. Champion Petfoods, Inc., 2020 WL 915824, at *3 (S.D.N.Y. Feb. 26, 2020) (collecting cases). The strong public policy favoring arbitration is "furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction. Arbitration can

---

[13] Citibank Argentina's Petition requests, among other things, that the Court enter a preliminary and permanent injunction against De Nevares's commencement of litigation or enforcement of any judgment against Citibank Argentina. (See Petition ¶ 37.) Citibank Argentina previously applied to this Court for a temporary restraining order and preliminary injunction. (See Dkt. No. 5.) The Court issued the TRO, enjoining De Nevares from enforcing, or attempting to enforce, the Judgment against Citibank Argentina or any of its assets, pending the hearing and determination of Citibank Argentina's motion for a preliminary injunction. (See TRO at 2.)

become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute."[14] <u>Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 910 F.2d 1049, 1053 (2d Cir. 1990) (citations omitted). This reasoning applies with equal force where the parties delegate the arbitrability question to an arbitrator. <u>See General Mills</u>, 2020 WL 915824, at *6.

Because the injunctive relief applicable to this matter does not include the extraordinary remedy of enjoining foreign litigation, the <u>China Trade</u> factors are irrelevant. The Court finds that Citibank Argentina has satisfied the ordinary requirements for a preliminary injunction. As Citibank Argentina points out, (<u>see</u> Petition ¶ 36), absent an injunction, it faces the irreparable harm of losing the ability to enforce the parties' Arbitration Agreement. "It is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm." <u>See Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.</u>, 16

---

[14] Accordingly, the Court finds preliminary injunctive relief that preserves arbitration is in the public interest. <u>See No. Am. Soccer League</u>, 883 F.3d at 37 (setting out requirements for preliminary injunctive relief).

Civ. 5699, 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) (collecting cases).

Further, likelihood of success on the merits is satisfied because the Court has granted Citibank Argentina's motion to compel De Nevares to arbitrate the dispute. See Reliance Nat. Ins. Co. v. Seismic Risk Ins. Servs., Inc., 962 F. Supp. 385, 391 (S.D.N.Y. 1997) (finding grant of order to compel arbitration satisfies likelihood of success on the merits). Case law is clear -- the relevant inquiry for the likelihood of success prong is not whether Citibank Argentina will be successful on the merits of the dispute in arbitration, as De Nevares argues, (see Resp. Mem. at 29), but rather "the likelihood of success on the merits of [its] argument that the claims must be submitted to arbitration." WTA Tour, Inc., 339 F. Supp. 3d at 406; see also Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A., No. 19 Civ. 8692, 2019 WL 5257995, at *6 (S.D.N.Y. Oct. 17, 2019) ("[A]s other courts in this district have concluded, the correct question is . . . not who is likely to win the arbitration itself."); Nat'l Union Fire Ins. Co., 2016 WL 4204066, at *5 (finding likelihood of success where petitioner showed dispute should be decided by arbitration). As discussed above, Citibank Argentina has met this standard.

32

Accordingly, Citibank Argentina's motion for an anti-suit injunction is DENIED, and its application for a preliminary injunction enjoining De Nevares from enforcing, or attempting to enforce, the Judgment against Citibank Argentina or any of its assets pending arbitration is GRANTED. In light of this determination, De Nevares's Rule 65(b) Motion is moot, since the TRO expires upon determination of the motion for a preliminary injunction.

## VI. <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

De Nevares moves to dismiss the Petition for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (<u>See</u> Resp. Mem. 19-34.) The Court has found that the Petition not only states a claim for relief, but in fact demonstrates entitlement to a motion to compel arbitration and preliminary injunction. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). Accordingly, De Nevares's Motion to Dismiss is DENIED.

## ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of the petitioner Citibank Argentina for a motion to compel arbitration and a preliminary injunction (Dkt. No. 1) is **GRANTED,** and it is further

**ORDERED** that the motion of the respondent Alejandro De Nevares to dismiss Citibank Argentina's petition (Dkt. No. 27) is **DENIED.**


**SO ORDERED.**


Dated: New York, New York
       13 February 2022

_____
                                        Victor Marrero
                                          U.S.D.J.

34