```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
THE BRANCH OF CITIBANK, N.A.       :
ESTABLISHED IN THE REPUBLIC        :
OF ARGENTINA                       :
                Plaintiff,         :
                                   :   21 Civ. 6125 (VM)
    - against -                    :
                                   :
ALEJANDRO DE NEVARES,              :   DECISION AND ORDER
                                   :
                Defendant.         :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

By order dated December 17, 2021, on motion by petitioner The branch of Citibank, N.A. established in the Republic of Argentina ("Citibank Argentina"), the Court held respondent Alejandro De Nevares ("De Nevares") in contempt for violating the temporary restraining order (the "TRO") entered in this action on July 31, 2021. (See "Contempt Order," Dkt. No. 46.) In connection with obtaining the Contempt Order, Citibank Argentina seeks an award of attorney's fees and costs against De Nevares (the "Motion," Dkt. No. 66) and submits the declaration of Robert L. Sills (the "Sills Decl.," Dkt. No. 67), an attorney for Citibank Argentina, in support. De Nevares opposes the Motion. (See Dkt. No. 71-1.)

1

## I. <u>BACKGROUND</u>[1]

A. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pending the Court's determination of Citibank Argentina's petition, Citibank Argentina applied for a TRO and preliminary injunction to enjoin De Nevares from taking any action affecting the merits of the parties' underlying dispute in this litigation. (<u>See</u> Dkt. No. 5.) Having heard oral argument and having reviewed the parties' submissions, the Court issued a TRO on July 31, 2021. (<u>See</u> Dkt. No. 22.)

On November 29, 2021, Citibank Argentina filed a letter motion (<u>see</u> Dkt. No. 45) seeking a premotion conference in anticipation of moving for an order holding De Nevares in contempt for violating the TRO. Citibank Argentina argued that the explicit language of the TRO prohibited De Nevares's recent action of joining in his Argentine counsel's motion before the Argentine Labor Court (the "Request for Clarification"). De Nevares denied that his actions were prohibited by the TRO. (<u>See</u> Dkt. No. 47.)

---

[1] The Court presumes familiarity with the facts and prior proceedings, which can be found in the earlier decision in this matter, <u>The branch of Citibank, N.A. established in the Republic of Argentina v. De Nevares</u>, No. 21 Civ. 6125, 2022 WL 445810 (S.D.N.Y. Feb. 13, 2022). The Court recites only the background material to the instant motion.

Following additional briefing by the parties (see Dkt. Nos. 49, 50), on December 17, 2021, the Court heard oral argument with respect to the contemplated order holding De Nevares in contempt. The Court, on the record, granted Citibank Argentina's motion and held De Nevares in contempt for his failure to comply with the TRO. (See "Transcript," Dkt. No. 52.) The Court also entered a Contempt Order the same day summarizing the rulings on the record. These rulings included an order that De Nevares must immediately withdraw from the Request for Clarification to bring himself into compliance with the Court's TRO. (See Contempt Order at 2.) If De Nevares did not comply with the TRO by December 22, 2021, the Court would impose a daily coercive fine.

On December 28, 2021, counsel for Citibank Argentina, having not heard from De Nevares regarding his compliance, wrote his counsel. (See Dkt. No. 56 at 1.) Later that day, De Nevares informed the Court by letter, that the Argentine court had accepted his withdrawal from the Request for Clarification and that he intended to move to dissolve the TRO. (See Dkt. No. 54 at 1.) The Court then directed Citibank Argentina to respond to De Nevares's letter. (see Dkt. No. 55.) In addition to challenging De Nevares's anticipated motion, Citibank Argentina's response also contested De Nevares's characterization of the Argentine court proceeding,

3

arguing that the Argentine court merely acknowledged receipt of the filing rather than accepting the withdrawal. (See Dkt. No. 56 at 1.) Citibank Argentina also requested that the Court direct De Nevares to submit proof of his compliance and to make reasonable efforts to cause his Argentine counsel to comply with the TRO. (See id. at 1-2.) The Court found no such order necessary given De Nevares's demonstrated compliance with the language of the Contempt Order and the language of the TRO enjoining Argentine counsel. (See Dkt. No. 60.)

### B. PARTIES' ARGUMENTS

Following the Contempt Order, Citibank Argentina filed the instant motion seeking an award of attorney's fees and costs against De Nevares in connection with Citibank Argentina's successful prosecution of, and investigation into, De Nevares's compliance with the Contempt Order. (See Dkt. No. 2.) Citibank Argentina requests a total of $88,805.97 in fees and costs supported by billing records and counsel's declaration. (See id.; Dkt. Nos. 67, 67-1.)

De Nevares challenges the Motion, contending that his actions were not willful, and the amount of fees and costs is unreasonable, both in terms of counsel's hourly rates and number of hours spent. (See Opp'n at 1-3.) First, De Nevares

4

argues that he did not intend to violate the TRO with his actions, as he understood the TRO to prohibit him only from *initiating* any proceedings to enforce the judgment. (See id. at 2 (emphasis added).) Second, De Nevares takes issue with Citibank Argentina seeking fees for efforts to determine his compliance, since the Court ultimately found De Nevares's letter sufficed. (See id. at 3.) De Nevares also argues that a grant of attorney's fees and costs is inappropriate because there is no proof that Citibank Argentina received or paid invoices in connection with the Motion.

## II. DISCUSSION

### A. LEGAL STANDARD

"[I]t is well settled in this Circuit that costs, including reasonable attorneys' fees, may be awarded to the party who prosecutes a contempt motion as an appropriate compensatory sanction for contumacious behavior." New York State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1043-44 (S.D.N.Y. 1997), aff'd, 159 F.3d 86, 96 (2d Cir. 1998). The Second Circuit has "express[ed] no opinion" on whether a showing of willfulness or bad faith is required before attorney's fees may be awarded for a violation of a court order, see Jacobs v. Citibank, N.A., 318 F. App'x 3, 5 n.3 (2d Cir. 2008), but willfulness "strongly supports granting

5

attorney's fees and costs to the party prosecuting the contempt." Terry 159 F. 3d at 96. A willful contempt is one where "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." United States v. N.Y.C. Dist. Council of N.Y.C., 229 F. App'x 14, 18 (2d Cir. 2007).

Where an award of attorney's fees is warranted, the Second Circuit has explained that district courts should determine a "presumptively reasonable fee" by multiplying "a reasonable hourly rate" by "the reasonable number of hours required by the case." Stanczyk v. Cty. of New York, 752 F.3d 273, 284 (2d Cir. 2014). "District courts have 'considerable discretion'" in determining reasonableness. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The reasonable hourly rate is the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)).

When calculating reasonable attorney's fees, the district court should exclude hours that are "excessive, redundant, or otherwise unnecessary." Luessenhop v. Clinton Cnty., 214 F. App'x 125, 126-27 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "[If] a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440.

B. APPLICATION

1. Willfulness

In issuing the Contempt Order, the Court found De Nevares met the three factors to substantiate willful contempt. (See generally Transcript.) The Court reaffirms that decision here and is unpersuaded by De Nevares's arguments that a reasonable reading of the TRO enjoins him only from initiating efforts to enforce the judgment. (See TRO at 2 ("The foregoing restraint includes, without limitation, *any* effort to enforce the Judgment against Citibank Argentina . . . .") (emphasis added)); See also Jacobs, 318 F. App'x at 5 ("[A]lthough Jacobs claims that the district court erred in awarding attorney's fees in the absence of a finding that he willfully violated the at-issue order or otherwise acted in bad faith,

7

this is essentially a challenge to the underlying contempt order."). Accordingly, De Nevares's willful contempt strongly supports an award of reasonable attorney's fees and costs.

### 2. Attorney's Fees

Turning to the reasonableness of the hourly rates Citibank Argentina's counsel submitted, the Court finds them reasonable based on the hourly rates approved in this district for attorneys at large New York City law firms involved in commercial litigation, the experience of counsel, and the fact that these rates reflect the amount the client has agreed to pay. New York counsel from the law firm Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") worked on the matter from November 2021 until January 2022. Counsel has negotiated rates with their client Citibank Argentina. One Pillsbury associate billed at a negotiated rate of $570 per hour in 2021 and $656.26 per hour in 2022, and one Pillsbury partner billed at a negotiated rate of $971.25 per hour in 2021 and $1020 per hour in 2022.

On a different matter, Judge Woods recently found Pillsbury's rates for New York counsel reasonable where the rates ranged from $405 to $660 for associates and $742 to $910 for partners. See Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC, No. 17 Civ. 8987, 2022 WL 413229, at *14

8

(S.D.N.Y. Feb. 9, 2022). The Court notes that those rates related to attorney services performed in 2017 and 2018. See id. Although the partner's 2021 and 2022 rates in this matter exceed the range approved by Judge Woods, rates have undoubtedly increased for commercial litigation work in the last four years. Moreover, "partner billing rates in excess of $1000 an hour[] are not uncommon in the context of complex commercial litigation." Themis Cap. v. Dem. Rep. Congo, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014); see also Tessemae's LLC v. Atlantis Cap. LLC, No. 18 Civ. 4902, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) ("Courts in this District have determined that hourly rates ranging from $250 to $1260 per hour[] for attorneys' work on a commercial litigation matter, were reasonable"; collecting cases); Vista Outdoor Inc. v. Reeves Family Tr., No. 16 Civ. 5766, 2018 WL 3104631, at *5-6 (S.D.N.Y. May 24, 2018) (approving partner rates up to $1,260; collecting cases). As additional support for reasonableness, that Pillsbury and Citibank Argentina have negotiated these rates is "a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc., 246 F.3d 142, 149-51 (2d Cir.

9

2001).[2] Accordingly, the Court finds Pillsbury's hourly rates in this matter reasonable.

Regarding the hours Pillsbury expended on this litigation, the Court also finds them reasonable. Pillsbury's billing records reflect a total of 113.15 hours that counsel spent prosecuting De Nevares's contempt and enforcing the Contempt Order. (See "Billing Records," Dkt. No. 67-1.) De Nevares argues that those hours are excessive and unwarranted. Specifically, De Nevares contends that the Court should neither award Citibank Argentina for the hours spent on its letter motion to enforce the Contempt Order, because Pillsbury was unsuccessful, nor the hours spent drafting an order to show cause motion never filed, because the Court's Individual Practice Rules allegedly require only a pre-motion conference letter. (See Opp'n at 3.)

As a threshold matter, "the Court finds that the invoice provided by Plaintiff's counsel[] is sufficiently detailed so as to permit the Court to examine the hours expended." Tessemae's, 2019 WL 2635956, at *5. Turning next to De Nevares's arguments, the Court finds them unpersuasive. First, as to Pillsbury's efforts to enforce the Contempt

---

[2] The Court is unpersuaded by De Nevares's argument that Crescent Publishing, or any other case in this Circuit, requires proof of Citibank Argentina's formal engagement with Pillsbury or proof of Citibank Argentina's actual payment of fees. (See Opp'n at 3.)

Order, the Court ordered Pillsbury to respond to De Nevares's letter motion concerning his efforts to bring himself into compliance with the TRO. (See Dkt. No. 55.) Even if the Court did not ultimately direct De Nevares to submit proof of his compliance, or direct De Nevares to make reasonable efforts to cause his Argentine counsel to comply as Citibank Argentina had asked the Court to do, "a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Hensley, 461 U.S. at 440. Moreover, the Court will not find the hours Pillsbury spent on a response, in accordance with the Court's Order, unreasonable.

Second, considering the circumstances, the Court does not find it unreasonable that Pillsbury prepared a motion for an order to show cause. Rule II.A of the Court's Individual Practice Rules provides that "[a] conference must be requested before filing any motion, except: motions brought by an order to show cause based on a legitimate emergency." Pillsbury explains that it intended to file the motion under this exception, given the impending decision in the Request for Clarification action in Argentina, but upon providing notice to De Nevares's counsel, Citibank Argentina requested a premotion conference instead to "avoid a needless procedural dispute." (See Motion at 3.) Upon the parties'

11

letter motions, the Court found full briefing unnecessary, reducing additional expenses in this matter. Unlike cases where courts have disallowed an award of hours spent on motions never filed, the substance of Citibank Argentina's motion was filed, though just in truncated form. Contra Mondragon v. Keff, No. 15 Civ. 2529, 2019 WL 2551536, at *13 (S.D.N.Y. May 31, 2019) (disallowing hours spent drafting motion on attachment that was never filed), adopted by 2019 WL 2544666 (S.D.N.Y. June 20, 2019); Rai v. WB Imico Lexington Fee, LLC, No. 09 Civ. 9586, 2017 WL 1215004, at *13 (S.D.N.Y. Mar. 31, 2017) (disallowing hours spent drafting motion on preliminary injunction that was never filed).

Because of the reasons why Citibank Argentina's full motion was never ultimately filed, as well as the fact that preparing the motion informed and "substantially reduced" the number of hours Pillsbury spent on the filed letter motion, the Court concludes those hours should be included in Citibank Argentina's fee award.

Considering Pillsbury's detailed billing records, the complexity of this case implicating international law, and Pillsbury's efforts to conserve resources by having only two lawyers work on the matter, with an associate handling most of the tasks, the Court concludes that 113.15 hours is

reasonable for investigating and prosecuting De Nevares's failure to comply with the Contempt Order. Applying Pillsbury's rates to the hours determined by the Court to be reasonable, the Court awards Citibank Argentina attorney's fees in the amount of $85,729.06, plus expenses in the amount of $3,076.91, for a total award of $88,805.97.

## ORDER

For the reasons stated above, it is hereby

**ORDERED** that respondent Alejandro De Nevares pay petitioner The branch of Citibank, N.A. established in the Republic of Argentina attorney's fees and costs in the total amount of $88,805.97; and it is

**ORDERED** that the Clerk of the Court close this case.

**SO ORDERED.**

Dated: New York, New York
       2 May 2022

_____
Victor Marrero
U.S.D.J.